*592 OPINION OF THE COURT
Bellacosa, J.
Defendant, the owner of a Brooklyn building, was indicted for numerous felonies arising out of a fire which killed one tenant and injured another. The building had been renovated without permit and converted from an approved commercial office space to a nonapproved single-room occupancy (SRO) dwelling. Among the Building Code violations created by the illegal alteration were electrical deficiencies which caused the fire. The trial court dismissed the indictment on defendant Reyes’ motion. The Appellate Division reversed on the law and reinstated the indictment. We now affirm and agree that the Grand Jury evidence was legally sufficient to support the charges. Reyes was shown to have participated directly in the creation of the fire-producing conditions and to have retained control of the premises under the terms of a triple net lease, by which he gave operational and management responsibility over to another person.
Defendant Reyes owned the building from March 1983 through the time of the fire in December 1985. The fire started in a kitchen on the second floor. One of the second-floor tenants perished in the fire and a third-floor tenant was injured while fleeing from the flames.
From July 1983 through October 1985, the building was managed by Velez pursuant to a net lease agreement — the record title remained in Reyes’ name and Velez collected the rents and paid for any necessary repairs, maintenance, taxes and utility costs. In April 1985, Velez sublet the building to Arias who, in turn, permitted two others, Troncoso and Dume, to manage the grocery store on the ground floor. Troncoso also collected the residential rent money for Velez.
The Grand Jury charged Reyes and Velez with manslaughter, second degree, criminally negligent homicide, assault and reckless endangerment. By separate motions, both Velez and Reyes sought dismissal on legal insufficiency grounds. After inspecting the Grand Jury minutes, the trial court dismissed *593 the indictment, stating that although the Grand Jury evidence established that a variety of hazardous conditions was a direct cause of the fire, "there is nothing in the Grand Jury minutes indicating that either defendant was responsible for creating the illegal conditions or violations or had possession or control over the premises during the time that the conditions were created.” The court also held that the Grand Jury should have been instructed as to the rights and responsibilities of the parties to a triple net lease agreement, the document itself having been presented to it. The People appealed and the Appellate Division reversed and reinstated the indictment as to both. Only Reyes is before us on a grant of leave to appeal by a Judge of this court.
A Grand Jury may indict when reasonable cause from competent and admissible evidence is presented to it, supporting its belief that legally sufficient evidence is present to establish that the accused committed the offense (CPL 190.65 [1]). On a motion to dismiss an indictment (CPL 210.20 [1] [b]), the court’s inquiry is keyed only to that legal sufficiency postulate, since the adequacy of the proof to establish reasonable cause is necessarily within the exclusive fact-finding function of the Grand Jury (People v Jennings, 69 NY2d 103, 115; see also, CPL 70.10 [1]; People v Mikuszewski, 73 NY2d 407, 411).
Measured by these threshold propositions, we conclude that the Grand Jury had enough evidence before it to conclude that defendant participated in the creation of the fire-producing conditions in the building, and that he also failed in his continuing duty as legal owner of the building to eliminate those conditions. It was reasonably foreseeable that the creation and continuance of the dangerous conditions presented a substantial and unjustifiable risk of death or injury in a fire.
The evidence showed a building with numerous electrical hazards, including the use of too many extension cords, exposed wires, improperly secured electrical boxes, broken wall outlets and improperly grounded equipment. The city’s electrical wiring inspector told the Grand Jury that these electrical violations created a substantial risk of an electrical fire. The Fire Marshall added that he was "98 percent” certain that the fire had been started by heat from overloaded electrical wiring in the kitchen wall. Moreover, there was also evidence that once the fire started, the structural characteristics of the building and other persisting hazardous conditions contributed *594 to the rapid spread of the fire and aggravated the risk of death and injury. The single rooms on the second and third floors were constructed with highly flammable materials within a wood frame building, containing no "fire stopping” materials to impede the spread of fire between rooms and floors. For this reason, wood frame buildings are prohibited as SRO dwellings. Also, contrary to legal requirement, there were no smoke detectors, working fire alarms or fire extinguishers on the second and third floors. All but one of the rooms on the second floor lacked the legally required second means of egress, and the building was also not equipped with a sprinkler system — the legal alternative to the two means of egress requirement. Thus, the evidence showed that the conditions in the building created the risk, caused the fire and fed its rapid spread, depriving tenants of early warning, thus escalating the risk to trapped victims (People v Nelson, 309 NY 231; People v Deitsch, 97 AD2d 327, 335-336). The foreseeable events were thus a "sufficiently direct cause” to justify accusation of criminal responsibility (see, People v Kibbe, 35 NY2d 407, 412-413; contrast, People v Warner-Lambert Co., 51 NY2d 295, 305, cert denied 450 US 1031).
Direct eyewitness testimony showed Reyes personally supervised the construction that illegally and dangerously converted the space on the second and third floors into a SRO dwelling. The legal documentation was also presented showing Reyes’ retention of legal control over the building. Concomitantly, therefore, he had a continuing statutory duty to keep the building in a safe condition. Section 78 of the Multiple Dwelling Law requires that "[e]very multiple dwelling * * * shall be kept in good repair” and "[t]he owner shall be responsible for compliance with the provisions of this section” (Multiple Dwelling Law § 78 [1]). Defendant was an "owner” within the meaning of the statute because he was the owner "of the freehold of the premises or lesser estate” within it (Multiple Dwelling Law § 4 [44]). Although Reyes was not in actual possession of the building after he gave the leasehold to Velez, Reyes’ retained control supports the continuing duty with respect to the safety of the building and its tenants (see, Worth Distribs. v Latham, 59 NY2d 231, 237-238).
In particular, the lease between Reyes and Velez expressly provided that the tenant Velez "shall make no changes in or to the demised premises of any nature without [the] owner’s [Reyes’] prior written consent.” After the lease term commenced, Reyes continued to receive rent, responded to tenant *595 complaints about the electrical service costs, and carried the insurance for the building. There was other evidence that a notice identifying 11 electrical violations was mailed to Reyes only five months before the fire and that three follow-up notifications were sent when Reyes failed to respond to the initial one.
Taken alone and certainly taken together, defendant Reyes’ participation in creating and supervising the dangerous and illegal renovation and his retention of control under the lease arrangement provided the Grand Jury with legally sufficient evidence and theories on which to indict him for the crimes charged.
We have examined the other issues, including the claim of inadequate legal instructions to the Grand Jury, and we have concluded they lack merit.
Accordingly, the order of the Appellate Division reinstating the indictment should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed.