*972 OPINION OF THE COURT
Martin Marcus, J.
In this case, the defendant, who was hired to protect a store and its owner, has been charged with criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), a class D felony. The indictment arises out of an incident in which the defendant displayed and fired a weapon while foiling an attempt to rob the store. The defendant now asks the court to inspect the Grand Jury minutes and reduce the charge against him to the lesser offense of criminal possession of a weapon in the fourth degree (Penal Law § 265.01), a class A misdemeanor. The defendant claims that he possessed the weapon within his "place of business”, a circumstance that would preclude his conviction for the felony offense under Penal Law § 265.02 (4). His motion raises the question whether because the owner conducted an illegal gambling enterprise in the premises as well as a legitimate one, and hired the defendant to protect both, the defendant’s possession of the weapon falls within this "place of business” exception.
A person commits the crime of criminal possession of a weapon in the fourth degree when he possesses any firearm (Penal Law § 265.01). He commits the crime of criminal possession of a weapon in the third degree when he possesses any loaded firearm, unless that possession "takes place in such person’s home or place of business.” (Penal Law § 265.02 [4].) In this case, the defendant does not bear the burden of proof that the possession occurred in his home or place of business; instead, the People must allege and prove that it was not. (People v Rodriguez, 68 NY2d 674 [1986]; see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 265, at 380.) Since the People must present to the Grand Jury legally sufficient evidence, that is, competent evidence which, if accepted as true, would establish every element of the offense (CPL 190.65 [1]; People v Reyes, 75 NY2d 590 [1990]), it is the People’s burden on this motion to establish that the evidence before the Grand Jury was legally sufficient to establish that possession was not in the defendant’s place of business. Evidence is legally sufficient if, unexplained and uncontradicted, it would support a conviction. (People v Howell, 3 NY2d 672 [1958].)
While the language of the "place of business” exception might be read to apply only to the owner or operator of a business, it has been held to extend as well to an employee of *973 a business whose duties include protecting the property of that business (People v Francis, 45 AD2d 431 [2d Dept 1974], affd on other grounds 38 NY2d 150 [1975]; see also, People v Fearon, 58 AD2d 1041 [4th Dept 1977]), at least where the employer has authorized the employee to possess a weapon (People v Smith, 105 Misc 2d 586 [Sup Ct, NY County 1980]; see, People v Rondon, 109 Misc 2d 394, 400-401 [Sup Ct, NY County 1981]). In this case there is no question that the defendant was hired to protect both the store and its owner. And from the Grand Jury minutes it is implicitly, if not explicitly, clear that the owner authorized the defendant to carry a weapon for these purposes. At issue is whether the premises of the store, as it was operated, constituted a "place of business” within the meaning of Penal Law § 265.02 (4).
In his motion papers, the defendant contends that he was employed at a candy store, while in their response the People allege that he was a bouncer at a social club. In making these conflicting claims, the parties do not dispute where the defendant worked, but rather what the nature of the enterprise was. The Grand Jury minutes indicate that neither party’s position fully reflects the true situation.
The owner of the store and the defendant each appeared before the Grand Jury under a waiver of immunity. The owner testified as follows:
"Q: [W]hat type of place is this * * *?
"A: I sell school supplies, perfume, and I also take numbers.
"Q: You also take numbers?
"A: Yes. * * *
"Q: The person that you referred to that watches over your store, is he employed by you?
"A: Yes.
"Q: And when you refer to him, is his name Wilfredo Roman?
"A: Yes.
"Q: And when you say, he watches over your store, is that to watch over your gift shop and also your gambling practices?
"A: Yes, both things.
"Q: And he carries a weapon?
"A: Yes.
"Q: And you know he carries a weapon?
"A: Yes.”
*974 The defendant, Wilfredo Roman, gave similar testimony:
"Q: What type of establishment do you work for?
"A: A gift shop where they sell notebooks, pencils.
"Q: Is is also a gambling establishment?
"A: Yes.
"Q: What is your job at this establishment?
"A: My job was[,] you see there had been three robberies one after the other, and my job was to make sure nothing happen to this gentleman and so that nothing happen in the store.”
Thus, the uncontradicted evidence before the Grand Jury establishes that the premises at which the attempted robbery occurred, and where the defendant admittedly possessed a loaded firearm, served both as a legitimate gift shop and an illegal gambling establishment.
Indeed, the prosecutor who presented this matter to the Grand Jury responsibly included the "place of business” exception in his definition of the crime of criminal possession of a weapon in the third degree. (Cf., People v McWilliams, 96 Misc 2d 648 [Nassau County Ct 1978].) Furthermore, he explained to the grand jurors that: "The term place of business requires you to make a factual determination as to whether the defendant possessed the weapon in his/her scope of business responsibility and in the scope of his/her employment.” He also directed the Grand Jury to consider the crime of criminal possession of a weapon in the fourth degree if they found the "place of business” exception applicable to the defendant. The Grand Jury nonetheless voted to indict the defendant on the felony charge.
The term "business”, like a similar term, "enterprise”, is used and defined in various legal contexts. Whether an unlawful business constitutes a "business” or an "enterprise” depends on the particular definition of the term applicable in the context in which this question is raised. Where the language of the definition is not decisive, it may turn on the purpose for which the term is defined or used. The crimes of falsifying business records in the first and second degrees, for example, are committed when the business records of an "enterprise” are falsified. (Penal Law §§ 175.05, 175.10.) For this purpose, Penal Law § 175.00 (1) defines an "enterprise” as "any entity of one or more persons, corporate or otherwise, public or private, engaged in business, commercial, profes *975 sional, industrial, eleemosynary, social, political or governmental activity.” This definition likely limits an enterprise to a legitimate one, a logical interpretation given the improbability that the Legislature intended to protect the records of illegal businesses from fraud.
On the other hand, section 460.10 (2) of the Penal Law defines an "enterprise” for purposes of the crime of enterprise corruption. That crime is committed, inter alla, when a member of a "criminal enterprise” conducts the affairs of an enterprise through a pattern of criminal activity. (Penal Law § 460.20.) For these purposes, section 460.10 (2) explicitly includes within the definition of an "enterprise” not only an enterprise within the meaning of section 175.00 (1), but also a "criminal enterprise” as defined in section 460.10 (3). This, too, is logical, since the statute was designed to permit the prosecution of not only those members of a criminal enterprise who corrupt or victimize a legitimate enterprise, but also those who conduct the affairs of a criminal enterprise through a pattern of criminal acts. (See, legislative findings, Penal Law § 460.00.)
The CPLR provides yet another example. For purposes of the "business records” exception to the hearsay rule, CPLR 4518 (a) states that, "The term business includes a business, profession, occupation and calling of every kind.” Relying on the breadth of this language and the logic behind the hearsay exception, the Court of Appeals has held that, given a proper foundation, the records of a criminal enterprise may be admitted in evidence as "business records”. This is so because " '[t]he principles of efficient accounting apply just as readily to an illicit enterprise as they do to a licit [enterprise].’ ” (People v Kennedy, 68 NY2d 569, 576 [1986], quoting United States v Baxter, 492 F2d 150, 164 [9th Cir 1973], cert denied 416 US 940 [1974].)
In the present context, the Legislature did not define the term "place of business” at all, and, thus, the premises of a criminal enterprise are not explicitly included or excluded by the statutory language. Resort is therefore necessary to the purpose of the "place of business” exception. The exception reduces the criminal liability of the possessor of a weapon because it "ascribes a quasi-respectable intent to the possessor, suggesting that he keeps the weapon to protect himself and his property” (People v Santana, 77 Misc 2d 414, 415 [Crim Ct, Queens County 1974]). Accordingly, a location is particularly suitable as a "place of business” if it has "substantial public *976 access” and is a place "where money changes hands in return for items or services.” (People v Rondon, 109 Misc 2d 394, 398, supra.) A gift shop is, of course, such a place.
By its nature, a numbers spot is generally also substantially accessible to the public, and in such a place, too, money changes hands in return for an "item” (a betting slip) or a "service” (the acceptance of a bet). Nonetheless, it is obvious that a gambling location is not the type of "business” the Legislature had in mind when it created the "place of business” exception to criminal possession of a weapon in the third degree. It is hardly a mitigating factor that a member of a criminal enterprise in possession of a weapon possessed it in that enterprise’s headquarters, and such a person is not likely to have had the "quasi-respectable intent” that the exception is meant to recognize. (See, People v Santana, supra.) Indeed, the defendant does not contend that premises used solely for an illegal enterprise are a "place of business” within the meaning of the statutory exception, and I conclude that they are not.
At the same time, however, the People do not contend that the gift shop was merely a facade for the gambling operation or that items like school supplies or perfume were not actually on sale there. Their generalized claim that the defendant was a bouncer cannot be read to constitute a denial of the bona fides of the gift shop, and there is, in any case, no support for such a claim in this Grand Jury record. As reflected in the testimony quoted above, the Grand Jury had no basis to conclude that the store served one purpose to the exclusion of the other. Accordingly, the question becomes whether what would otherwise be a "place of business” was not one because some of the business conducted there was lawful and some unlawful, or because the defendant possessed the weapon in order to protect both. Whether focusing upon the dual intent of the possessor or upon the mixed nature of the activity on the premises, it is apparent that the exception remains available to the defendant here.
If an owner of a business, or an employee authorized by the owner, possessed a weapon in his legitimate place of business, the exception to this particular offense, criminal possession of a weapon in the third degree, would necessarily apply even though the possessor’s purpose was not, or was not only, the "quasi-respectable” one of self-protection. While the exception may "ascribe” a "quasi-respectable” intent to a possessor, it does not require one. The Legislature simply provided that *977 such possession "shall not * * * constitute a violation of this section if [it occurs] in such person’s home or place of business.” (Penal Law § 265.02 [4].) Similarly, because the Legislature did not condition the exception on the possessor’s having exclusively a noncriminal purpose, there is no basis on which to conclude that a mixed purpose disqualifies him from invoking it.[1] (But see, People v McWilliams, 96 Misc 2d 648 [Nassau County Ct 1978], supra.)[2] Thus, that the defendant in this case possessed the weapon in part for an "illicit” purpose — to protect the owner’s illegal numbers operation — does not alter the fact that he possessed it in a place where legitimate business was conducted and for the purpose of protecting that legitimate business as well.
Similarly, in drafting this exception, the Legislature did not expressly limit its application to premises on which the business conducted is exclusively legitimate. Obviously, if a legitimate business engaged in some illegal activity — for example, larcenies from those who supply it with its merchandise, or bribery of building, fire or health inspectors who come to its door — it would nonetheless be a "place of business” for purposes of the statute. Indeed the same could be true even if the *978 criminal conduct was a systematic and routine part of the otherwise legitimate business. Given the plain language of the exception, even where as here, legitimate and criminal enterprises are run out of the same location — and by the same person — the existence of the legitimate enterprise is enough to invoke the exception and the coexistence of the criminal one does not defeat it.
Policy arguments might be advanced for the desirability of a different rule — either focusing on the primary use of the premises or the primary intent of the possessor, or requiring an entirely legitimate use or intent. The Legislature, however, did not impose such a rule. (See, People v Parker, 70 AD2d 387, 393-394 [1st Dept 1979] [Birns, J., dissenting], revd on dissenting opn 52 NY2d 935 [1981] ["Courts should not torture clear statutory language to mean what it does not say, in the dubious interest of reaching a result which the court perceives to be more desirable.”].)
Hanging out a "Gift Shop” sign is not enough to establish that a numbers spot shared the premises of a legitimate business. Under appropriate facts, a court might well find that a store front was no more than a cover for an illegal operation. Given the evidence before the Grand Jury, however, this is not such a case. Accordingly, because the defendant possessed a weapon on the premises of a legitimate business, and was authorized to do so by the owner for the protection of that business, his indictment for criminal possession of a weapon in the third degree cannot stand, and his motion to reduce the charge to the lesser crime of criminal possession of a weapon in the fourth degree is granted.
In accordance with CPL 210.20 (6), the effectiveness of this order is stayed for 30 days following its date of entry, unless the stay is waived earlier by the People. In this 30-day period, the People may file a reduced indictment charging the defendant with criminal possession of a weapon in the fourth degree, resubmit the count of criminal possession of a weapon in the third degree (assuming that, consistent with this decision, evidence can be adduced sufficient to establish that offense), or appeal this order.

. The "place of business” exception, of course, is specific to the crime of criminal possession of a weapon in the third degree, and may not be invoked by a person who possesses a weapon in his home or place of business in defense of the misdemeanor offense of criminal possession in the fourth degree. Moreover, if the weapon were loaded and the possessor intended to use it unlawfully, possession in the home or place of business would make out the more serious offense of criminal possession in the second degree (Penal Law § 265.03), a C felony, to which the "place of business” exception also does not apply.

. In dicta in that opinion, the court cited People v Fearon (58 AD2d 1041 [4th Dept 1977]), for the proposition that "the exception does not apply when the person possessing the weapon does so to accomplish some illicit purpose”, and People v Francis (45 AD2d 431, 434 [2d Dept 1974]) for the proposition that it does not apply "where the weapon is used for some purpose outside the scope of his business function” (People v McWilliams, 96 Misc 2d 648, 653). In Fearon, the defendant shot and killed a fellow employee at their office because he believed the victim was trying to have him fired. Relying on Francis, the court held that the "place of business” exception did not apply to an employee simply because he chose to shoot his victim at their place of employment. The court in Francis held that a post office employee, who was not authorized by the post office to carry a weapon and whose possession of a weapon did not further any function or duty he did have, could not invoke the exception. Thus, both cases turn upon the lack of "legitimate” purpose or authorization, and neither case supports a conclusion that someone authorized to carry a weapon for an authorized purpose may not invoke the exception because he also has an illicit purpose or uses it in an unauthorized manner.