■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROGER REAGAN, JR., Also Known as BILL REAGAN, WESTAR MECHANICAL, INC., and 5L ENTERPRISES, INC., Respondents. [683 NYS2d 543] —Appeal by the People, as limited by their brief, from so much of an order of the County Court, Orange County (Byrne, J.), dated December 17, 1997, as granted (1) those branches of the omnibus motion of the defendants Roger Reagan, Jr., a/k/a Bill Reagan and Westar Mechanical, Inc., which were to dismiss (a) counts one and two of the indictment charging them with manslaughter in the second degree, and (b) counts five and six of the indictment charging them with reckless endangerment in the second degree, and (2) those branches of the separate motion of the defendant 5L Enterprises, Inc., which were to dismiss counts five and six of the indictment charging it with reckless endangerment in the second degree.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

The charges here arose out of a tragic, fatal accident in which two workers drowned while digging a ditch when a water pipe burst, filling the ditch with water.

The proof before the Grand Jury established that the defendant Roger Reagan, Jr., a/k/a Bill Reagan was the president of the defendant Westar Mechanical, Inc. (hereinafter Westar), which was hired to install a water and sewer line on certain property in the City of Middletown (hereinafter the City). Reagan hired the defendant 5L Enterprises, Inc. (hereinafter 5L), to perform excavation work in connection with the installation. As workers from Westar and 5L were excavating the ditch, they unexpectedly encountered a water pipe. When informed of it, Reagan immediately ordered the work stopped. He then conferred, on location, with Richard Brannan, the plumbing inspector for the City, as to the best way to proceed. The plumb-

ing inspector, acting on behalf of the City, did not stop the excavation, nor did he direct or require that the pipe be supported or the trench be shored, or that the water be shut off. On the contrary, the conference with Brannan, at the scene, resulted in Reagan telling the men to continue, but to avoid getting too close to the pipe. Thereafter, the accident occurred and, despite frantic efforts to save the two workers inside the ditch, the water level rose for approximately one-half hour, and the two workers drowned.

The defendants were charged in an indictment containing six counts. Counts one and two charged Reagan and Westar with manslaughter in the second degree (Penal Law § 125.15 [1]); counts three and four charged all of the defendants with criminally negligent homicide (Penal Law § 125.10); and counts five and six charged all of the defendants with reckless endangerment in the second degree (Penal Law § 120.20). In connection with the defendants' omnibus motions, *inter alia,* to inspect the Grand Jury minutes and dismiss the indictment, the County Court distinguished between recklessness on the one hand, and criminal negligence on the other. It dismissed counts one, two, five, and six of the indictment that were premised on recklessness, and left intact, for trial, the two counts of criminally negligent homicide. We affirm. The evidence before the Grand Jury was insufficient to establish the element of recklessness. Furthermore, the proof failed to support a finding that the deaths of the two workers by drowning were foreseeable.

Reckless conduct, which is a primary component of both manslaughter (Penal Law § 125.15 [1]) and reckless endangerment in the second degree (Penal Law § 120.20), is defined in Penal Law § 15.05 (3): "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation".

The People have failed, as a matter of law, to present evidence to satisfy the above-quoted definition. The evidence revealed that when the defendants recognized a possible danger, Reagan himself halted the work, and nothing was done until after his discussion with the City plumbing inspector, Richard Brannan, at the site, as to the appropriate procedure to follow.

Contrary to the dissent's position, the evidence before the

Grand Jury established that the City plumbing inspector was both qualified and authorized to approve or disapprove continuation of the excavation, and to determine the issue of how to deal with the pipe. Indeed, Brannan testified that he had been the City's plumbing inspector for over 14 years, and that he had been in the plumbing business for 17 years before that. He further testified that part of his official duties as City plumbing inspector involved visiting excavation sites. In this respect, the defendants' reliance upon 16 NYCRR 753-4.9 (d) supports their position. That section (and its predecessor, 12 NYCRR former 53-4.11 [b], in effect at the time of the accident) provides that where, as here, an operator (here, the City) of an underground facility is notified that an unknown underground facility (here, the water pipe) has been discovered in the course of an excavator's work, the operator shall "immediately determine whether or not such discovered facility is his or hers by means of records, on-site inspection or otherwise, and * * * (2) if such facility does belong to him or her, advise the excavator on how to proceed and of any special requirements the operator deems necessary". The City plumbing inspector obviously superintended the excavation, over which he had unquestioned legal and official control, so as to comply with the regulation vis-à-vis the security and integrity of the pipe. We are not holding that tacit or express official approval will automatically absolve a defendant of criminal charges. Our holding is limited to the facts and circumstances of this case, and we note further that the County Court left intact the criminal negligence counts, which are not before us on this appeal.

There was no evidence presented that anyone at the scene, including the participants, contractors, plumbers, laborers, excavators, or the City, objected to the procedure, or went ahead *recklessly* (i.e., with heightened awareness of a substantial and unjustifiable risk of collapse, let alone a risk of drowning). They all continued, believing the prescribed approach to be both appropriate and officially approved. All of this not only fails to support, but *negates* the element of recklessness that the defendants were aware of and "consciously disregard[ed]" a "substantial and unjustifiable risk". Considering that the defendants' conduct did not amount to a conscious disregard of a known risk, the additional statutory element—that the disregard be so extreme as to be a gross deviation from a reasonable person's standard of conduct—is, a fortiori, not met (*see, People v Warner-Lambert Co.,* 51 NY2d 295; *People v Roth,* 176 AD2d 1186, *mod* 80 NY2d 239, *cert denied* 450 US 1031). While tragic drownings ensued, that does not convert the defendants' actions into criminal reckless-

ness, except by hindsight. Thus, this case also fails to satisfy the foreseeability element of criminal liability for recklessness.

As the Court of Appeals said in *People v Roth* (80 NY2d 239, 243-244, *supra*):

"For purposes of criminal liability, it was not enough to show that, given the variety of dangerous conditions existing at the site, an explosion was foreseeable; instead the People were required to show that it was foreseeable that the explosion would occur in the manner that it did.

"It was error, therefore, to instruct the Grand Jury that the defendants could be indicted 'if you find that they recklessly created unsafe conditions that led to [the victim's] death by a foreseeable event, namely, the explosion' ".

The actual causative events and the supposed preventability of the *drownings* by the use of shoring is too speculative to satisfy the standard of criminal recklessness, or foreseeability in the context of criminal recklessness. In measuring whether a risk is substantial and unjustifiable and whether conduct is a gross deviation from that of a reasonable person, it bears emphasizing that no one at the scene foresaw or suggested, prior to continuation of the digging, that the water should be shut off for fear of drowning. Moreover, the County Court pointed out an additional cause of the drownings, notably the failure of others, who had control of the water system, to turn off the water after the pipe burst. This also speaks to unforeseeability.

The dissent's position is incompatible with established, governing case law and would, without precedent, inappropriately extend and import civil liability concepts for OSHA violations into the realm of homicide, by way of criminal recklessness. The *Warner-Lambert* Court explained that before criminal liability for recklessness may be sustained, the defendants must have foreseen the precise cause of death and then their disregard of that risk must have constituted a gross deviation from the standard of care that a reasonable person would have observed in the situation. It is not enough that a defendant's actions lead to someone's death (*see, People v Warner-Lambert Co.,* 51 NY2d, *supra*, at 306-307). In *Warner-Lambert* the defendants were warned of a risk of explosion and ignored it. An explosion did take place but by means of a different combination of factors. The Court of Appeals held that the foreseeability prerequisite for recklessness was lacking. In the Court's language: "inasmuch as the evidence before the Grand Jury was not legally sufficient to establish the foreseeability of the actual immediate, triggering cause of the explo-

sion, defendants cannot be held criminally culpable" (*People v Warner-Lambert Co.,* 51 NY2d, *supra,* at 307). If criminal recklessness could not be sustained for indictment in *Warner-Lambert*—a vastly more egregious case than the one before us—it may not be sustained here. Rosenblatt, J. P., Copertino and Altman, JJ., concur.

O'Brien, J., dissents and votes to reverse the order insofar as appealed from, deny those branches of the defendants' motions which were to dismiss counts one, two, five, and six of the indictment, and reinstate those counts of the indictment, in the following memorandum with which Friedmann, J., concurs. The test of the legal sufficiency of an indictment is " 'whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury' " (*People v Galatro,* 84 NY2d 160, 163, quoting *People v Jennings,* 69 NY2d 103, 114; *see also,* CPL 70.10 [1]). Upon review of the proof presented to the Grand Jury, I conclude that the evidence was legally sufficient to sustain those counts of the indictment which charged the defendants with manslaughter in the second degree and reckless endangerment in the second degree.

The defendant Roger Reagan, Jr., a/k/a Bill Reagan, is the president of the defendant Westar Mechanical, Inc. (hereinafter Westar). In July 1996, Westar contracted with Rowley Building Products (hereinafter Rowley) to connect a water and sewer line to its property in the City of Middletown (hereinafter the City). Westar subcontracted with the defendant 5L Enterprises, Inc. (hereinafter 5L), which was owned and operated by Charles Loidice and his sons, to dig the trench necessary to lay the pipe from the street to the building. According to 5L and Westar employees, Reagan was in charge of the project. On the second day of the excavation, one of the walls of the trench caved in, a broken water line flooded the trench, and two workers drowned before they could be extracted from the mud. The victims were a worker employed by Westar and a worker employed by 5L.

Reagan, Westar, and 5L were indicted on two counts of criminally negligent homicide (Penal Law § 125.10 [causes death with criminal negligence]) and two counts of reckless endangerment in the second degree (Penal Law § 120.20 [recklessly engages in conduct which creates a substantial risk of serious physical injury]). Reagan and Westar were indicted on two counts of manslaughter in the second degree (Penal Law § 125.15 [1] [recklessly causes death]).

The County Court dismissed the manslaughter and reckless

endangerment counts on the ground that the People failed to present sufficient proof to establish the element of recklessness common to these crimes, in other words, that the defendants were "aware of and consciously disregard[ed] a substantial and unjustifiable risk" and that the risk was "of such nature and degree that disregard thereof constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]). Contrary to my colleagues, I conclude that the County Court erred and that the evidence was sufficient to establish prima facie the element of recklessness.

The Grand Jury heard evidence that, on the date of the accident, the victims were working in a trench which was about 135 feet long, 7 to 8 feet deep, and 3 to 4 feet wide, with vertical walls. There was no shoring or other safety measures in place to prevent the walls from caving in upon the workers. That morning, a six-inch pipe, which was part of the automatic sprinkler system for the Rowley building, was uncovered during the excavation of the trench. The pipe ran parallel to the trench wall. Reagan initially stopped the excavation work and, after consulting with a City plumbing inspector, told the backhoe operator to continue digging the trench a few inches away from the original cut in order to avoid the pipe. As the work progressed, the pipe remained imbedded about six inches inside the trench wall. A worker periodically uncovered the pipe by hand to ensure that it remained undisturbed. The two victims continued working in the trench.

In the afternoon, the trench wall containing the sprinkler pipe collapsed. The sprinkler pipe broke and water began bubbling up from the bottom of the trench. The two victims quickly became mired in mud and were drowned in the rising water before they could be rescued.

The evidence presented by the People demonstrated that the defendants were aware of the risk that the trench walls would cave in and that the sprinkler pipe would break if the wall surrounding it collapsed. Reagan had worked on about a hundred excavations, including many performed with 5L, and he and the Loidices had witnessed small cave-ins at their work sites in the past. In a videotaped interview with a representative of the Federal Occupational Safety and Health Administration (hereinafter OSHA) investigating the accident, Reagan stated that he was aware that an excavation exceeding 5 to 6 feet in depth required some type of shoring or protective system. Reagan admitted that he could give no reason for the failure to use a protective system at this work site. Further, the People

showed that Reagan and the Loidices were aware that the sprinkler pipe uncovered during the excavation carried water under pressure and that the pipe lengths were essentially held together by the surrounding dirt. Reagan acknowledged in the OSHA interview that he was aware, prior to the accident, that the sprinkler pipe contained water under pressure. Despite this information, the excavation continued, and the workers remained in the trench without any protective system to prevent the walls from collapsing.

The People offered sufficient evidence that the defendants' disregard of these risks was a gross deviation from what a reasonable person would have done under the circumstances. The Grand Jury was advised that, pursuant to OSHA regulations, shoring or other adequate protective systems were required in excavations over five feet deep. The City plumbing inspector testified that, in his experience, where a trench was deeper than five feet and narrower than four feet, a protective measure such as shoring was used to keep pressure off the side walls. In the City, the prevalent practice was to use shoring if the soil was soft or sandy, although there was a tendency not to use shoring if the soil was "hardpan". An analysis of the soil by OSHA revealed that the soil was a sandy-gravely type, which meant that it was not very cohesive. In his interview with the OSHA representative, Reagan stated that he did not know what kind of soil was present at the excavation site.

The majority concludes that evidence that Reagan consulted with the City plumbing inspector after discovering the sprinkler pipe negates any inference that the defendants were aware of and disregarded a risk. Although Reagan stated in the OSHA interview that the plumbing inspector approved of altering the route of the trench a few inches to avoid the pipe, there was no evidence before the Grand Jury that the plumbing inspector advised Reagan that it was safe to proceed with workers in the trench or that the plumbing inspector was in any way qualified or authorized to approve the manner in which the excavation work was performed. In any event, the weight to be given this evidence is for the petit jury (see, People v Galatro, 84 NY2d 160, supra).

I also disagree with the majority on the issue of foreseeability. Initially, with respect to the charges of reckless endangerment in the second degree, the People need not establish that the defendants could have foreseen the actual manner in which the victims were injured. The statute is directed at conduct which creates a risk of serious injury and creation of the risk alone will sustain prosecution (see, People v Galatro,

*supra*; *People v Roth,* 80 NY2d 239). The People therefore sustained their burden by presenting prima facie proof of recklessness and that the risk involved serious physical injury.

With respect to the charges of manslaughter in the second degree, the People were required to show that the actual cause of the death-producing event was foreseeable (*see, People v Warner-Lambert Co.,* 51 NY2d 295, *cert denied* 450 US 1031; *see also, People v Roth, supra*). The People presented sufficient evidence that the absence of a protective system in the trench created the risk of a cave-in and that the cave-in caused the sprinkler pipe to break, increasing the risk that the workers would be trapped. These events were foreseeable and were a "sufficiently direct cause" of the victims' deaths to satisfy a criminal prosecution (*see, People v Reyes,* 75 NY2d 590, 594; *see also, People v Kibbe,* 35 NY2d 407, 412-413).

Finally, prosecution of these criminal charges is not incompatible with governing case law, as the majority suggests. The Court of Appeals, in *People v Pymm* (76 NY2d 511, 524, *cert denied* 498 US 1085), recognized that OSHA's penalties "operate as a floor and that States can supplement these penalties with sanctions authorized by their own criminal laws". Accordingly, I would reverse and reinstate the first, second, fifth, and sixth counts of the indictment.