OPINION OF THE COURT
Robert M. Haft, J.
Defendant was indicted for the crime of criminal possession of a weapon in the third degree. He has moved to dismiss the indictment on the ground that the prosecutor failed to instruct the Grand Jury that if defendant possessed the weapon in his home or place of business, the crime would be only that of criminal possession of a weapon in the fourth degree, a class A misdemeanor.
Defendant is one of five incorporators and a director and manager of a not-for-profit corporation formed to sponsor domino games and hold domino competitions on the lower east side of Manhattan. He was arrested, while inside his club, in possession of a loaded pistol. He claims that his position as manager and director of the corporation entitles him to invoke the “place of business” exception provided in subdivision (4) of section 265.02 of the Penal Law as follows: “A person is guilty of criminal possession of a *395 weapon in the third degree when: (4) He possesses any loaded firearm. Such possession shall not, except as provided in subdivision one, [previous conviction of any crime] constitute a violation of this section if such possession takes place in such person’s home or place of business.”
The question of whether a not-for-profit corporation can be considered a “business” and whether it is the business of the manager or director so as to diminish his criminal liability are issues of first impression, certainly in New York and perhaps, nationwide.

Is a social club a type of business exempted under the statute?

The legislative history of New York’s firearm control laws over the past 15 years reveals a trend towards the increasing regulation of firearms and other dangerous weapons. The gun laws were amended in 1964 to include the “home or place of business” exception to section 265.02 of the Penal Law. The provision, which merely reduces the charge of criminal possession of a weapon from a felony to a misdemeanor, is consistent with New York’s attempts to penalize unlawful possession of firearms, and stands in sharp contrast to the laws of other States. The Report of the New York State Joint Legislative Committee on Firearms and Ammunition reveals a legislative desire to “[prevent] serious crimes before they occur” without infringing on “other valuable or worthwhile ends, such as training for national defense, [and] the right of self-defense”. (NY Legis Doc, 1964, No. 12, p 10), and speaks of “balancing *** the interests.” (NY Legis Doc, 1965, No. 6, p 12.) In 1964, when the gun laws were amended to include the home or place of business exception, the committee reported, “In several significant respects the restrictions on firearms imposed by the New York statute exceed those of practically every * * * jurisdiction. Only New York and a single other state (Hawaii) require a license to possess a pistol or revolver in one’s own abode, on one’s own property or in one’s place of business.” (NY Legis Doc, 1964, No. 12, p 12.)
Other States have created total exemption from criminal liability for persons who are found to possess unlicensed *396 firearms in, among other places, their homes or places of business. (See, e.g., Fla Stat Ann, § 790.25, subd [3], par [n]; DC Code, § 22-3204; NJ Stat Ann, § 2C:39-6, subd [e].) Because other States make it lawful to possess unlicensed firearms in homes and places of business, it is likely that the courts in those States have construed their statutory exception more narrowly than the New York provision which merely reduces criminal liability. Thus, the court in Billinger v United States (425 A2d 1304) distinguished certain New York lower court cases which held that a taxicab was a place of business. The court in Billinger, in holding that the District of Columbia statute did not exempt as a place of business a van from which defendant operated a vendor business, noted that the New York provision did not couch “place of business” between “dwelling house” and “other land possessed by him” as did the District of Columbia statute. The court specifically reflected upon the fact that the New York statute still makes possession unlawful; “the subject language relates only to the degree of the offense.” (Billinger, supra.)
It is true that, for the most part, New York courts at Trial Term have applied the “home or business” exception in a fairly broad manner and, for example, as pointed out so recently in Billinger, have extended the business exception to include taxicabs and taxicab drivers. (People v Santiago, 74 Misc 2d 10; People v Anderson, 74 Misc 2d 415; People v Santana, 77 Misc 2d 414.)[1] But the Appellate Division in the Second and Fourth Departments has indorsed a narrower construction of the provision in cases involving places of business. In People v Francis (45 AD2d 431, affd on other grounds 38 NY2d 150), the court interpreted and reaffirmed its own holding in People v Levine (42 AD2d 769), a memorandum decision, where the court rejected defendant’s contention that the trial court erred as *397 a matter of law when it held that a taxicab was not a place of business.[2]
Indeed, the Appellate Division, Fourth Department, cited People v Francis in a memorandum decision rejecting the application of the place of business exception where defendant shot and killed his victim at the place where both were employed. (People v Fearon, 58 AD2d 1041.)
In People v Francis (supra) the dissent argued vigorously that the New York exception should be extended to cover a post-office employee carrying a gun in the post office, and based the argument, in part, on the fact that the New York provision still mandated a criminal penalty even after application of the place of business exception. In contrast, a New Jersey opinion, cited by the majority in support of its refusal to apply the exception, involved a total exemption from criminal liability should the New Jersey business exception be deemed applicable. (State v Valentine, 124 NJ Super 425.) Thus, the dissent suggested that because of the relative leniency of the New Jersey’s business exception provision, the reasoning of the New Jersey court was inapposite to a New York case.
The very strictness of the New York provision might argue, however, for a contrary conclusion, for it appears to be part of a continuing trend in New York State to impose severe restrictions on the possession of firearms. As recently as 1980, the Governor of New York State stated, in approving a mandatory one-year sentence for anyone found guilty of criminally possessing a loaded handgun (cf. L 1980, chs 233, 234), that “[w]e must let it be known that New York has the toughest gun law in the country and that it will be strictly enforced.” (NY Legis Ann, 1980, p 107.)
In applying the “place of business” exception, most of the cases speak of the need to protect property (People v McWilliams, 96 Misc 2d 648, 654 [“whether or not the weapons could reasonably be considered necessary or authorized for protection of persons or property”]; People v Francis, 45 AD2d 431, supra [relying in part on its finding *398 that the defendant was not delegated by his superiors to protect any property of the United States Government Post Office]; People v Santana, 77 Misc 2d 414, 415, supra [that the business exception “ascribes a quasi-respectable intent to the possessor, suggesting that he keeps the weapon to protect himself and his property”]). It should be noted additionally that the cases generally involve businesses where money changes hands in return for items or services. (Cf. People v McWilliams, supra [taxicab]; People v Francis, supra [post office]; People v La Paz, 95 Misc 2d 756 [grocery store]; People v Fearon, 58 AD2d 1041, supra [“Bernz-O-Matic”].) Moreover, they involve areas or locations of public access where many persons might be expected to pass through because of the nature of the business.
In the case at bar, the property consists of “the normal fixture [sic] and furniture one would expect to find in a social club *** a juke box, [and] its records.” Revenues involve fees collected for each domino tournament, and for the cost of running the club and for its maintenance. The club’s premises are not a location which involves substantial public access. In view of these facts, and bearing in mind the restrictive nature of New York’s gun laws, it would not appear that a gun is reasonably necessary to protect persons or property in this not-for-profit social club organized for the purpose of sponsoring domino competition^.
Finally, though it may be arguable that “a place of business” could encompass a social or recreational or eleemosynary activity, the ordinary definition of “place of business” is “[T]he place where a person earns his livelihood.” (94 CJS, Weapons, § 9, subd h, par [3], p 503.) Thus, even the literal language of the New York “place of business” exception would seem to imply a construction of the statute which would not extend to the facts of the case at bar.

In any event, could defendant, as director and manager of a social club, be an owner or employee; could the club be his place of business?

Defendant, although one of five incorporators of a not-for-profit corporation, relies upon his position as a director *399 to place him within the business exception. As a director, defendant’s function is to manage the affairs of the corporation. (Not-For-Profit Corporation Law, § 701.) It is the board, not the directors acting individually, who are vested with broad power to determine corporate policy and conduct corporate activities. (3 White, New York Corporations [13th ed], par 701.03.) To the underlying membership, however, is reserved an approving function on issues which are basic to the corporation’s organizational integrity or legally related to the termination of its existence. (3 White, par 701.03.) In New York, the directors’ managerial powers may range from absolute to merely honorary, since there is no limitation on the members’ right to modify their directors’ powers (See Not-For-Profit Corporation Law, § 701, providing that the corporation shall be managed by its board of directors “[ejxcept as otherwise provided in the certificate of incorporation”).
Title to corporate property is rightfully vested in the corporation itself. (See, e.g., Not-For-Profit Corporation Law, § 1006, subd [a], par [1].) Defendant, as director and manager of the corporation, is thus acting as its agent and, although not an owner or proprietor, could broadly be considered an employee of the corporation. But can an employee claim the exemption? In Scott v United States (392 A2d 4, reh den Nov. 22, 1978), defendant was an on-the-scene property manager of a used car lot. In holding that the trial court did not err when it instructed the jury that the District of Columbia “place of business” exception applied only to persons with a “controlling proprietary or possessory interest in the premises” the District of Columbia Court of Appeals said that “[t]he statute *** does not expressly — nor, we conclude, does it implicitly — create an exception allowing the person ‘in charge’ of premises to carry a pistol without a license. The exception refers to a proprietary or possessory *** interest, i.e., in ‘his dwelling house or place of business or on other land possessed by him.’” (Scott v United States, supra, p 6; court’s emphasis.) Thus, the court concluded that the trial court was correct in stipulating that the exception does not cover employees, managers or other workers, unless they individually have a controlling, proprietary or possessory interest in the *400 property. None of the New York cases has specifically addressed this question. They have generally assumed that an employee could fit within the language of the statutory exemption.

If an employee qualifies for the statutory exemption, must he nevertheless be authorized by his employer to possess a weapon?

Again, the few decisions in point have divided on the issue of whether an employee needs authorization from his employer to carry a firearm on business premises in order to invoke the “place of business” exception.
Some courts have applied the exception in the case of nonmedallion (gypsy) cabs (People v Anderson, 74 Misc 2d 415, supra; People v Santana, 77 Misc 2d 414, supra) without consideration of whether there was evidence that the driver was the actual owner of the cab or, if not, whether authorization was given the driver. In People v McWilliams (96 Misc 2d 648, supra) evidence was presented by the State’s witness that the automobile operated by the defendant was merely a “taxicab.” The court deemed this sufficient to trigger a response by the People that the place of business exception should not apply. In McWilliams (p 653), the court listed as a relevant factor in determining the application of the exception the “incidents of ownership or control over the area or object to be protected,” suggesting that the defendant need not necessarily be an owner in order to invoke the exception, but instead could be someone in control of the property.
In People v Francis (45 AD2d 431, supra) the court based its refusal to extend the exception to an employee in a post office in part on a finding that defendant was not delegated by his employers to protect any property of the post office. In People v Fearon (58 AD2d 1041, supra) the court held that the exception should not apply where an employee shot and killed a fellow employee at their place of employment. The language of the memorandum decision suggests that the court was, at least, concerned with the implications of permitting employees to invoke the exception without inquiry as to authorization. The court stated (p 1041) “[t]o permit large numbers of persons to be subjected *401 only to a misdemeanor for the illegal carrying of weapons would certainly controvert the meaning and intent of the statute * * * Such a result would be a perversion of justice.” Our Appellate Division has not yet spoken but the requirement of authorization by an employer was imposed by this court in a case where defendant was a part-time Deputy Sheriff without permission from his superiors to carry or possess a gun. (People v Smith, 105 Misc 2d 586.)
Out-of-State cases are even more clear cut in holding that authorization by an employer be shown. In State v Valentine (124 NJ Super 425), the New Jersey court refused to extend the business exception to include the manager of a bar owned by another, stating that the defendant did not have a proprietary interest in the bar, and that there was no evidence produced that the gun was acquired by the owner or was in defendant’s possession in connection with the operation of the business. In Peoples v State (287 So 2d 63, reh den Sept. 10, 1973), the Florida court reversed a judgment of conviction of a grocery store employee, stating that the owner’s testimony implied that the defendant had the authorization to protect the property.
In conclusion, the premises of a not-for-profit corporation, organized for the purpose of sponsoring domino competitions, does not constitute a “place of business” within the meaning of subdivision (4) of section 265.02 of the Penal Law. In view of the strict regulation of firearms within this State, and the fact that a social club is not the kind of entity for which it is reasonable to believe that a gun is necessary to protect persons and property, the application of the “place of business” exception to the case at bar is not warranted.
Defendant, as a director and manager of the club, is probably, for purposes of subdivision (4) of section 265.02 of the Penal Law, a person who could come within the statute: he is an agent of the corporation whose function is to manage its affairs, subject to the ultimate authority of the underlying membership which defines his powers. But as an employee of the corporation he is probably not entitled to invoke the exception without authorization from his corporate employer which was never established in this *402 case. The prosecutor was thus not required to instruct the Grand Jury as to the place of business exception.
Defendant’s motion to dismiss the indictment is denied.

. These courts have purported to rely upon legislative intent in extending the exception to the taxicab situation. Thus, the court in Santiago stated that “[t]here is no precedent to guide the court. Nonetheless, it appears evident that within the letter and spirit of subdivision 2 of section 265.02 the possession is a possession in a ‘place of business’ ”. And, the court noted, “[i]t is evident that the Legislature intended to classify possession in a home or place of business a lesser degree of crime thán one that takes place elsewhere. The policy behind such special classification is evident.” (People v Santiago, supra, p 11.)

. In refusing to apply the dissent’s “liberal construction” of the statute, the court in Francis spoke of the Legislature’s intent to limit the use of guns. (People v Francis, supra, p 153.)