**Suzanne Bordwell DeWALD, Plaintiff,**

v.

**AMSTERDAM HOUSING AUTHORITY, John Riccio, Nellie Orsini, Lilliam Rivera and Bonnie Page, Individually and as Members of the Board of Directors of the Amsterdam Housing Authority, Defendants.**

**No. 91–CV–1141.**

United States District Court, N.D. New York.

June 7, 1993.

DeLorenzo, Gordon, Pasquariello, Weis-
kopf & Harding, Schenectady, NY (Thomas

E. DeLorenzo, Joseph P. Eriole, of counsel), for plaintiff.

D'Agostino, Hoblock, Greisler & Siegal, Albany, NY (Pamela A. McMahon, of counsel), for defendants Riccio, Orsini, Page and Amsterdam Housing Authority.

Lilliam Rivera, pro se.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

Plaintiff commenced this action in October, 1991 against the Amsterdam Housing Authority ("AHA") and four members of the AHA's board of directors, alleging that these defendants terminated her employment as the AHA's Executive Director based upon her age and sex in violation of federal and state law. Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (1988), and sections 296 and 297 of the New York State Executive Law. Jurisdiction is based upon the existence of a federal question, 28 U.S.C. § 1331 (1988). Presently before the court are defendants' motions for summary judgment or, in the alternative, to preclude plaintiff's introduction of certain witnesses and testimony at trial.[1]

## I. BACKGROUND

The AHA is a public corporation organized pursuant to N.Y. Pub.Hous. Law § 428 (McKinney 1989) for the purpose of managing public housing facilities in Amsterdam, New York. The AHA has a seven member board of directors; five board members are appointed by the mayor of Amsterdam for five year terms, and the remaining two members are elected by tenants of the AHA's facilities to two year terms. *See id.* § 30. The board is charged with, *inter alia,* selecting and employing a "Housing Project Manager." *See* By–Laws of Amsterdam Housing Authority (hereinafter "By–Laws") art. VI. The AHA states that the title "Housing Project Manager" has been replaced by use of the current title for that position, "Executive Director." *See* Letter from Pamela A. McMahon to Court (Apr. 28, 1993) at 1 (docket entry # 40).

In February, 1987, the board voted 5–1 to hire plaintiff Suzanne Bordwell DeWald, then twenty-five years old, to serve as the AHA's Executive Director.[2] The only board member who did not vote in favor of plaintiff was defendant Riccio. Riccio cast his vote instead for Karen Cunningham, another applicant for the Executive Director position. None of the other individually-named defendants were members of the board in February, 1987, when plaintiff was hired. They, however, joined the AHA board at various times during plaintiff's tenure as Executive Director.

The voluminous record shows that plaintiff's association with the AHA board, and these defendants in particular, was tumultuous at best. The parties have detailed the hostility that plagued the relationship between plaintiff and defendants. Most notably, meetings were marked with name-calling and back stabbing. An air of distrust and bitterness enveloped the board and plaintiff. According to defendants, the tension stemmed from various board members' dissatisfaction with plaintiff's handling of tenant concerns and the contempt with which she allegedly treated board members who disagreed with her. Judicial economy prevents the court from repeating every instance of

---

1. On November 3, 1992, this court granted defense counsel's request to withdraw as counsel for defendant Rivera because Rivera had refused to cooperate in preparing a defense. Rivera based her refusal to cooperate upon a perceived conflict of interest between her and defense counsel. Rivera is involved in unrelated litigation in which defense counsel represents the Amsterdam Housing Authority against her. The court's order granting leave to withdraw was based upon Rivera's refusal to cooperate in the defense, not upon any perceived conflict of interest. In pursuing this motion for summary judg-

ment, defense counsel has represented to the court that her clients' interests are directly aligned with Rivera's interests, and plaintiff has made no suggestion to the contrary. Indeed, many of defense counsel's arguments work to the benefit of Rivera as well as the other defendants. Accordingly, the court will consider counsel's arguments for Rivera's benefit, as well.

2. Only six board members voted. The seventh board member, the Chairman of the board, was present at the meeting but did not vote.

insubordination and unprofessionalism alleged in defendants' approximately 1,000 pages of submissions. Examples of questionable conduct included three occasions on which plaintiff allegedly interfered with the nominating process for new board members by contacting the mayor to express her opposition to certain appointments. *See* DeWald Dep. at 104, *provided in* Def. exh. "J". Also, several tenants complained to their state assemblyman about plaintiff's insensitivity to the needs of disabled tenants, making specific reference to the AHA's lack of handicapped accessible housing. *Id.* at 266–73. Defendants contend that in the later days of her tenure as Executive Director, plaintiff was especially contemptuous toward board members who opposed her, describing in a local newspaper some of their positions as "focus[ing] on the inane," "absurd," and part of a "petty game." *See* Def. exh. "H" (copies of newspaper articles quoting plaintiff). Underlying the entire conflict, argue defendants, was a general personality conflict between Riccio and plaintiff that turned political in nature and ultimately cost plaintiff her job. On July 23, 1990, the board voted to terminate plaintiff's employment.

Plaintiff, not surprisingly, offers a widely divergent version of the circumstances that precipitated her termination. She alleges that the board acted based upon certain members age-based and sex-based animus toward her. Most of her allegations in this regard are directed at Riccio, who from the beginning of plaintiff's employment openly expressed his displeasure with the presence of a young woman as Executive Director. Plaintiff recounts one meeting with Riccio during which he allegedly made his feelings known:

> [O]n January 30, 1988[,] John Riccio entered my office unannounced and I asked him if he had any concerns regarding my performance. He stated that he did not. I then informed him that I received phone calls from several other Board members indicating that he had expressed concerns about my performance to them. I told him that if he had any problems or concerns regarding my behavior that he should speak to me first. Mr. Riccio became incensed and demanded to know "who squealed" and at that time he got up from his chair and began stalking around my office calling me "dearie" and "sweetie" and how dare a "young girl" like me question him. Mr. Riccio made at least 2 unannounced visits to my office and repeated his tirade, demanding to know "who squealed on him." Mr. Riccio tried very hard to intimidate me through verbal attacks and, in a menacing manner, positioned himself near me during the tirade.

DeWald Aff. (2/19/93) ¶ 18. On another occasion, in late 1989, the board undertook discussions concerning salary increases for various staff members, including plaintiff. During those discussions, Riccio allegedly commented to other board members who would be voting that "a young girl like [plaintiff] had no business making that kind of money." *Id.* ¶ 29.

The tension between plaintiff and the AHA board, and Riccio in particular, peaked at a meeting of the board on July 23, 1990, when the board voted 4–3 to terminate her employment. Defendants Riccio, Orsini, Page and Rivera voted in favor of termination. In urging his fellow board members to vote to fire plaintiff, Riccio allegedly referred to her as an "immature girl," and upon seeing plaintiff after the vote, Riccio allegedly said, "[c]ome on, let's be a big girl about this." DeWald Aff. ¶ 32. Plaintiff contends that Riccio's discriminatory attitude toward her sex and age was a substantial factor motivating the board's decision to terminate her employment.

Plaintiff recognizes that Riccio was just one voting member of the AHA's seven-member board and that his vote alone would not have been enough to cause her termination. Plaintiff maintains, however, that Riccio was an influential member of the Board who, when assisted by a second board member's discriminatory motive, held enough leverage to sway sufficient votes in his favor to effect plaintiff's termination. The second board member, contends plaintiff, was defendant Orsini. According to plaintiff, Orsini's impermissible motive was evidenced most clearly by assertions that Orsini made after the vote to terminate plaintiff's employment.

Orsini justified her vote to fire plaintiff by reminding tenants who had gathered to support plaintiff that "[s]ome of you ... [who now support plaintiff] came to me with problems—she was too young, we needed a man or someone with more experience." Def. exh. "H"; *accord* DeWald Aff. ¶ 30. Orsini's comments were quoted in an Amsterdam newspaper the day after the meeting. *See* Def. exh. "H" (newspaper article quoting Orsini). Plaintiff alleges that Orsini's independent animus based upon plaintiff's age and sex, coupled with Riccio's leverage over two other board members, created the four votes necessary to seal her fate.

With respect to Riccio's influence over other board members, plaintiff has presented uncontradicted evidence showing that Riccio, in addition to serving on the AHA board, was also a board member of the Independent Living Center in Amsterdam and that defendant Page was the Independent Living Center's Executive Director. Hence, submits plaintiff, inasmuch as Riccio held some discretion with respect to Page's career and salary, Page was conceivably coerced by fear of retaliation to vote with Riccio on this highly publicized battle for control. Significantly, Orsini was also a member of the Independent Living Center's board of directors and thus wielded similar influence over Page. Finally, plaintiff implicitly contends that defendant Rivera was an AHA tenant who needed Riccio's and Orsini's support in her own eviction proceeding against the AHA and therefore similarly feared that she would suffer personally if she did not obey Riccio's request to vote against plaintiff. By falling in line to follow Riccio's and (to a lesser extent) Orsini's vote to terminate plaintiff's employment, argues plaintiff, these remaining board members unlawfully acted in concert with Riccio's discriminatory scheme.

In October, 1990, plaintiff filed with the New York State Department of Human Relations ("DHR") a complaint against the AHA and Riccio, claiming that they had wrongfully terminated her employment on the basis of her age and sex. She withdrew her complaint six months later, in April, 1991, and commenced this action pursuant to Title VII of the Civil Rights Act of 1964 and New York State Executive Law.

## II. DISCUSSION

### A. *Summary Judgment*

Defendants assert several arguments for why summary judgment should be granted. Defendants can prevail on their motion for summary judgment by establishing that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56. To withstand the motion for summary judgment, plaintiff need only show that there exists a factual dispute as to her ability to prove her prima facie case. Fed.R.Civ.P. 56(c); *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 316 (2d Cir.1992). If plaintiff successfully shows the existence of such a factual dispute, then resolution of that dispute must be reserved for the trier of fact and summary judgment would be inappropriate. *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988)). With this standard as background, the court discusses defendants' arguments *seriatim.*

### 1. Claim under N.Y. Exec. Law § 296

As previewed above, plaintiff claims that she is entitled to relief pursuant to section 296 of the New York Executive Law.[3] That section states, in pertinent part:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age ... [or] sex ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

---

3. Plaintiff occasionally refers to her cause of action as arising under the New York Human Rights Law. As a point of clarification, article 15 of the Executive Law, in which section 296 appears, is also known as the Human Rights Law. N.Y.Exec.Law § 290(1) ("[t]his article shall be known as the 'Human Rights Law'"). Thus, references to the Human Rights Law are occasionally used interchangeably with references to article 15 of the Executive Law.

N.Y.Exec. Law § 296 (McKinney 1982). Plaintiff relies in part upon this law, considered in conjunction with the facts outlined above, to argue that defendants wrongfully terminated her on the basis of her age and sex.

■ Section 296, while seemingly expansive at first glance, is subject to a qualification that limits a plaintiff's ability to rely upon it in bringing a suit. Specifically, section 297 of the Executive Law, commonly known as the law's "election of remedies" provision, requires a party seeking relief pursuant to section 296 to pursue her claim in *either* a judicial forum *or* a "local commission on human rights," but not both. N.Y.Exec. Law § 297(9) (McKinney Supp.1992);[4] *see Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533, 546 (N.D.N.Y.1989) (McCurn, C.J.). The only exception to this rule pertains to situations in which the DHR dismisses an administrative claim "for administrative convenience"; only under these circumstances may a party subsequently litigate the same claim in a court of law. N.Y.Exec.Law § 297(9). Federal courts exercising ancillary jurisdiction over a claim under section 296 must strictly adhere to New York's election of remedies scheme. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 256–57 (2d Cir.1991) (construing N.Y.Exec.Law §§ 296, 297), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Thus, a federal court may not adjudicate a claim of unlawful discriminatory practice under section 296 which has already been filed with the state DHR unless the DHR dismissed the claim for administrative convenience. *Id.*

Defendants argue that plaintiff cannot maintain her cause of action in this court under New York Executive Law because she already elected to pursue that claim before the DHR. *See* Def. exh. "C" (plaintiff's DHR complaint and amended DHR complaint). Moreover, argue defendants, DHR did not dismiss the claim for administrative convenience, thus precluding plaintiff from ever filing her Executive Law claim in a court of law. Plaintiff responds by arguing that because she withdrew her DHR complaint before that agency ever adjudicated it, she never truly litigated in that forum. Indeed, DHR dismissed plaintiff's complaint at her request, in a document entitled "Order of Withdrawal", *see* Def. exh. "D", and implied to her in a letter that the withdrawal would facilitate her proceeding on her same claims in federal court. *See* Pl. exh. "1".[5] Plaintiff additionally points to a DHR regulation setting forth procedures governing withdrawals of DHR claims. *See* N.Y.Comp.Codes R. & Regs. ("NYCRR") tit. 9, § 465.5. These regulations, argues plaintiff, strongly imply that her withdrawal before DHR adjudicated her claim did not prejudice her rights in this court. Thus, plaintiff insists that she cannot fairly be estopped from pursuing these claims for the first time in this court.

■ Although plaintiff presents a sympathetic argument that she did not "elect a remedy" in the DHR so as to preclude her from litigating in this forum, she cannot escape from the fact that she did file a claim

---

**4.** That statute states, in pertinent part:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and other remedies as may be appropriate, *unless such person had filed a complaint hereunder or with any local commission on human rights,* ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.... No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this ar-

ticle, may file a complaint with respect to the same grievance under this section....
N.Y.Exec.Law § 297(9) (emphasis added). This statute defines "unlawful discriminatory practice" as only those practices specified in sections 296 and 296–a of the Executive Law.

**5.** The letter, written by a DHR employee in response to plaintiff's request for information on how to withdraw her DHR claim, stated, in pertinent part:

[While plaintiff is preparing the forms for withdrawal] no further action will be taken on this matter. However, if I do not hear from you on or before April 15, 1991[,] it will be presumed that you do not intend to go into federal court, and the [DHR] investigation will continue.

with the DHR and that DHR did not dismiss her claim for administrative convenience. The lack of a dismissal for administrative convenience is fatal to plaintiff's case in light of the express language of the section 297. Once plaintiff filed her claim with DHR, she was forever barred from litigating that same claim in a court of law unless the DHR dismissed her claim for purposes of administrative convenience. N.Y.Exec.Law § 297. Since the DHR did not do so, she cannot maintain her Executive Law claim in this court. *See, e.g., Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1196 (S.D.N.Y. 1985).

Plaintiff's claim that the DHR never actually adjudicated her claim, so that she therefore never "elected" her remedy, is without merit. Section 297 bars judicial claims by parties who have "filed" claims with the DHR or some other local agency. N.Y.Exec. Law § 297 (aggrieved persons "shall have a cause of action in any court of appropriate jurisdiction ... unless such person had *filed a complaint*" with DHR (emphasis added)). The litigant need not have *adjudicated* her claim in the DHR in order to foreclose her opportunity to pursue the claim in court. Pursuant to the express terms of the statute, the party has elected an administrative remedy—and foreclosed a judicial remedy—by merely *filing* a complaint with the DHR. While this construction of the statute may appear harsh, the court is bound by the express terms of the statute and cannot deviate therefrom when its terms are so abundantly clear. *See National Foods, Inc. v. Rubin,* 936 F.2d 656, 659-60 (2d Cir.1991) ("[the court's] interpretation of the statute begins with the language itself, and the rule that language will be controlling when its context makes its meaning sufficiently clear" (citations omitted)).

The fact that plaintiff withdrew her complaint from DHR before the agency reached a determination of her claim is of absolutely no consequence. In fact, other courts have reviewed this precise issue and similarly concluded that a plaintiff's withdrawal of a DHR complaint does not revive her right to litigate in a judicial forum. The Eastern District of New York was perhaps most clear on this issue in *Kaczor v. City of Buffalo,* in which it observed:

> New York courts have held that plaintiffs who first file with the State Division of Human Rights or with a local agency lose their right to proceed *de novo* in a judicial forum. Once a complaint is filed with a state agency, the plaintiff is deemed to have selected his remedy and *must* proceed through the administrative procedures. He may ultimately seek review in the New York State Supreme Court, Appellate Division. N.Y.Exec.L. § 298. *He may not withdraw his administrative complaint and turn to the courts.* The only exception to this rule is a dismissal of the complaint by the agency on the grounds of administrative convenience. *See Emil v. Dewey,* 49 N.Y.2d 968, 406 N.E.2d 744, 428 N.Y.S.2d 887 (1980).

657 F.Supp. 441, 446 (W.D.N.Y.1987) (emphasis added). Other courts similarly have ruled that a plaintiff's filing of a DHR complaint forecloses her ability to proceed in the courts, even after the plaintiff subsequently withdraws her administrative complaint. *Cameron v. American Bazaar,* 41 Fair Empl. Prac.Cas. (BNA) 1600, 1601 (S.D.N.Y.1986), *cited in Buscemi v. Pepsico, Inc.,* 726 F.Supp. 99, 101 (S.D.N.Y.1989); *Koster,* 609 F.Supp. at 1196 (rejecting argument that withdrawal of administrative complaint "is tantamount to a dismissal for administrative convenience"). Significantly, this court is aware of no cases—nor have the parties cited any cases—in which a court has ruled that a formal withdrawal of a DHR claim somehow revives a plaintiff's right to initiate the same claim in a court of law.

Plaintiff argues in desperation that the DHR regulation governing withdrawal of complaints somehow allows her an exception to the statutory election of remedies. Her argument fails on a number of grounds. Most particularly, the regulation's subsection governing withdrawals, subsection (a), is conspicuously silent as to the effect of a withdrawal—it merely describes the procedure which a party seeking to withdraw must follow. *See* 9 NYCRR § 465.5(a). Nowhere does the regulation even remotely suggest that a withdrawal effectuated under subsec-

tion (a) would by itself rekindle a claimant's right to pursue her claims in court. *See id.* In fact, a separate subsection of the same regulation—subsection (d)—delineates situations in which DHR may *dismiss* a complaint for administrative convenience. *See id.* § 656.5(d). One permissible ground for dismissal is that "the complainant has initiated or wants to initiate ... [a] court action based on the same grievance." *Id.* § 465.-5(d)(2)(vi). If the DHR had relied upon this regulation to dismiss plaintiff's complaint for administrative convenience, then plaintiff could maintain this suit pursuant to section 296. *See Drummer v. DCI Contracting Corp.*, 772 F.Supp. 821, 830 (S.D.N.Y.1991) (citing *Realmuto v. Yellow Freight Sys., Inc.*, 712 F.Supp. 287, 290–91 (E.D.N.Y.1989)). DHR, however, did not dismiss plaintiff's complaint for administrative convenience. Instead, plaintiff opted to withdraw her complaint before the DHR had an opportunity to act upon it. Once plaintiff unilaterally withdrew her DHR complaint, pursuant to the express terms of the Executive Law she could no longer take advantage of the benefits that would have applied had the DHR dismissed her complaint for administrative convenience. *Cf. Buscemi*, 726 F.Supp. at 101 (DHR's dismissal for administrative convenience, even though ordered at plaintiff's request, allowed plaintiff to file the same grievance in federal court).

In short, since the DHR did not dismiss plaintiff's complaint for administrative convenience, plaintiff's filing with the DHR of her claim alleging violation of section 296 of the Executive Law precludes her from filing that same claim here. Accordingly, defendants motion for summary judgment of plaintiff's claim arising under the New York Executive Law is granted.

Pl. exh. "1".

**6.** The ADEA renders it unlawful for an employer to, *inter alia*, "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1).

**7.** The statute defines "employer" as "a person engaged in an industry affecting commerce who

## 2. Claim under the ADEA

Defendants next argue that plaintiff's claim arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34 (1988 & West Supp.1992), must also be dismissed because plaintiff is not a member of that statute's "protected class." [6] In so arguing, defendants invoke section 631(a) of the ADEA, which succinctly states that "[t]he prohibitions in this [statute] shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Since plaintiff was only 28 years old at the time of her termination from the AHA, *see* Def. exh. "J", at 4 (plaintiff's deposition, reporting her date of birth), she is not entitled to maintain a suit under the ADEA. *See Charrette v. S.M. Flickinger, Co.*, 806 F.Supp. 1045, 1056 (N.D.N.Y.1992) (McCurn, C.J.).

Plaintiff agrees with defendants and states in response that she does not seek recovery under the ADEA. *See* Pl.Mem. (2/22/93) at 5 ("plaintiff has made no claim under the ADEA"). Rather, according to plaintiff, her age discrimination claim is grounded solely in section 296 of the New York Executive Law. Thus, the parties agree that plaintiff has no cause of action before the court arising under the ADEA. The effect of this conclusion, in light of the aforementioned ruling invalidating plaintiff's claim under the Executive Law, is that plaintiff has no cause of action remaining for age discrimination. Therefore, plaintiff's only remaining claim is for sex discrimination in violation of Title VII.

## 3. Claim under Title VII

### (a) Individual liability for corporate acts

Title VII prohibits "an employer" from discharging any individual because of her sex. 42 U.S.C. § 2000e–2(a)(1).[7] At oral argument, this court expressed its concern over whether suit properly could be main-

has fifteen or more employees ..., [or] an any agent of such person." *Id.* § 2000e(b). A "person" under the statute includes "one or more individuals, governments, governmental agencies, political subdivisions ... [and] corporations...." 42 U.S.C. § 2000e(a); *see Solin v. State University of New York*, 416 F.Supp. 536, 539 (S.D.N.Y.1976) (State University of New York, "[a]s a government-created corporation, ... fits this definition").

tained against the individually-named defendants. The court reasoned that the AHA, as plaintiff's employer, was the only party with authority to terminate her employment and that none of the individually-named defendants could have fired her. Indeed, the AHA By–Laws state that *the AHA*—not any individual or group of directors—shall employ the Executive Director. Since none of the individual board members had independent authority to employ (and therefore presumably terminate) plaintiff, it is difficult to fathom how they can be held liable for her termination.

The court invited supplemental briefing from the parties on this complicated issue, and is now convinced that this suit may be maintained only against the AHA as a corporate entity. This conclusion is grounded in fundamental principles of corporate law. The AHA is, pursuant to N.Y.Pub.Hous.Law § 428, a "body corporate," organized pursuant to the provisions of the Public Housing Law. Unfortunately, the Public Housing Law contains little description of the corporate structure of Housing Authorities, particularly with regard to the responsibilities and powers of the entity itself *vis-a-vis* the members of its board of directors. In fact, a review of New York statutes reveals just one Title, the Business Corporation Law, that defines the breadth of corporate authority and the relationship between a corporation and its directors. In light of the absence of any indication in the Public Housing Law of the scope of the "body corporate['s]" power and liability under circumstances such as the present, this court necessarily turns to the Business Corporation Law for some guidance in determining what liability the respective parties ordinarily would face in the corporate decision-making process.[8]

The corporate body is an autonomous entity—an "artificial person"—and as such is empowered to act in its own name in furtherance of the purpose for which it was formed. N.Y.Bus.Corp.Law § 202(a)(16). It may enter into its own contracts, *id.* § (a)(7), and hire its own employees, *id.* § (a)(10). Significantly, no single individual may undertake unilateral managerial action on behalf of the corporation; rather, "the business of the corporation shall be managed under the direction of its board of directors."[9] N.Y.Bus. Corp.Law § 701; *see Aries Ventures Ltd. v. Axa Finance S.A.,* 729 F.Supp. 289, 295 (S.D.N.Y.1990). "It is the board, not the directors acting individually, who are [sic] vested with broad power to determine corporate policy and conduct corporate activities." *People v. Rondon,* 109 Misc.2d 394, 439 N.Y.S.2d 803, 806 (N.Y.Sup.Ct.1981).

■ Applying these principles to the present case, it becomes clear that the individual directors of the AHA cannot be held liable for the entity's action of terminating plaintiff's employment. The AHA is a corporation charged with administering public housing in Amsterdam and, as described in the Business Corporation Law (as well as the Public Housing Law, *see* N.Y.Pub.Hous.Law § 30), has a board of directors which collectively manages the AHA's major policy initiatives. The AHA By–Laws are unambiguous in this respect: *"the Authority* shall employ" an Executive Director. By–Laws art. VI. Nowhere do the By–Laws state that any individual board member shall employ the director. Indeed, as discussed above, the acts of the individual board members have no consequence except to the extent that they cast votes in furtherance of the corporate purpose. *See Rondon,* 439 N.Y.S.2d at 806; *see also* N.Y.Bus.Corp.Law § 708(d) ("the vote of the majority of the directors present at the time of the vote . . . shall be the act of

---

8. The court recognizes that the AHA is a public corporation, not a business corporation. Hence, reliance upon the Business Corporation Law might at first glance seem somewhat peculiar. The court further notes in this regard, however, that it looks to New York's Business Corporation Law as persuasive, not binding, authority, and does so only because of the absence of any comparable provisions in the Public Housing Law. At any rate, the provisions of the Business Corporation Law relied upon in this discussion are in

no manner inconsistent with the provisions of the Public Housing Law.

9. There is no allegation or evidence that the AHA board delegated any of its hiring/termination authority here. Therefore, the court need not become engrossed in a discussion of whether the board properly delegated its responsibilities to individual board members.

the board"). In casting their votes to terminate plaintiff's employment, the four individually-named defendants did no more than authorize the AHA, the corporate employer, to terminate an individual within its own employ. Inasmuch as plaintiff was employed by the AHA and not any of the individually-named defendants, *see* By–Law art. VI, it seems logically indefensible to hold the individually-named defendants liable for her termination.

■ Case authority overwhelmingly supports the conclusion that voting members of a board cannot be held liable for the corporate entity's resulting acts. *See, e.g., Rolin v. Escambia Cty. Bd. of Educ.*, 752 F.Supp. 1020, 1024 (S.D.Ala.1990) (school board members could be sued only in their official capacities); *Davis v. State Dep't of Health, F.E.*, 744 F.Supp. 756, 760 (S.D.Miss.1990); *see also Tillman v. Boaz*, 548 F.2d 592, 594 (5th Cir.1977) (city, not its mayor, was plaintiff's employer; therefore, relief could only be granted by city). When a corporate employer violates Title VII, the aggrieved party must seek relief against the employer itself, not its individual directors. The only exception to this general rule is that individuals who exercise supervisory control, such that they are vested with *independent* authority to effectuate employment decisions, are also susceptible to suit. *E.g. North v. Madison Area Ass'n for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401, 407 (7th Cir.1988) (citing cases); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1527 (M.D.Fla.1991) (only individuals who "make or contribute meaningfully" to employment decisions can be held liable under Title VII) (citing *Kolb v. Ohio*, 721 F.Supp. 885, 891 (N.D.Ohio 1989)); *House v. Cannon Mills Co.*, 713 F.Supp. 159, 159 (M.D.N.C. 1988).

The notion that a municipal entity alone can be liable for Title VII violations is hardly novel; the Second Circuit acknowledged this more than fifteen years ago, in *Monell v.*

*Dep't of Soc. Servs.*, 532 F.2d 259, 261 (2d Cir.1976) (*dictum* ), *rev'd on other grounds*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the present case, one cannot seriously contend, nor does plaintiff argue, that any of the individually-named defendants had direct supervisory control over plaintiff.[10] The only reason they are sued here is because they voted (and influenced others to vote) to have the AHA terminate plaintiff's employment. Their votes alone are not enough to hold these board members liable as "employers" within the meaning of Title VII. Since none of the individually-named defendants had independent authority to terminate plaintiff's employment, none can be held liable under Title VII as an employer. *Cf., e.g., Busby v. Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("the proper method for a plaintiff to recover under Title VII is by naming the supervisory agents of the employer or by naming the employer directly").

In reaching this conclusion, this court follows the rationale articulated by the Southern District of New York in *Women in City Gov't United v. New York*, 515 F.Supp. 295, 299 (S.D.N.Y.1981). That case involved a challenge to an employee retirement fund's use of sex-differentiated actuarial tables to determine eligibility for benefits. The trustees of the fund moved to dismiss the suit as asserted against them on grounds that they, like the individual board members in the present case, could not be held individually liable for the corporate fund's allegedly discriminatory acts. The court agreed, ruling:

> Those defendants, as individuals, are not employers (or agents thereof) within the purview of Title VII, 42 U.S.C. 2000e(§). They were working on behalf of the retirement fund] solely as trustees and at all times within the scope of their authority when they approved the use of sex-differentiated tables for the [retirement] [p]lans. Those acts should not be considered now as the basis for individual liability.

**10.** The only individual who arguably had such supervisory control was the Chairman of the board of directors. As defendants correctly point out, article III of the By–Laws suggests that the Chairman of the board may have supervisory control over the Executive Director. Article VI is more blunt, providing that the Executive Director shall, *under the supervision of the Chairman of the board,* have general management authority over the AHA. Significantly, the Chairman of the AHA board during the time periods in question is not a defendant in this action.

515 F.Supp. at 299. *Accord Bradley v. Consolidated Edison Co.*, 657 F.Supp. 197, 207 (S.D.N.Y.1987).

The individually-named defendants' motion for summary judgment of plaintiff's Title VII claim is granted.[11]

### (b) Sufficiency of evidence against AHA

Dismissal of this suit as asserted against the individually-named defendants does not affect its validity against the AHA itself. The AHA argues that it too is entitled to summary judgment with respect to plaintiff's Title VII claim because plaintiff cannot produce sufficient evidence to establish a prima-face case of discrimination.

To prevail in her claim of sex discrimination under Title VII, plaintiff must show that the AHA, the only remaining defendant, terminated her employment "because of" her sex. 42 U.S.C. § 2000e–2(a)(1), (2). If plaintiff had no direct proof of discrimination, then she could still circumstantially prove her case in accordance with the disparate impact or disparate treatment frameworks articulated by the Supreme Court for those situations. *See, e.g., Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (disparate impact); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (disparate treatment); *see generally* Deborah E. Moore, Note, *Disparate Treatment Versus Disparate Impact: A Distinction Without A Difference*, 41 Syracuse L.Rev. 965 (1990). In this case, however, plaintiff contends that she need not rely upon the burden shifting schemes set forth in *Wards Cove Packing Co.* or *McDonnell Douglas Corp.* because she does have direct proof of sex discrimination by the AHA.

█ The court has reviewed plaintiff's evidence and agrees that, when considered in its totality, it is sufficient to show the existence of a factual dispute as to whether the AHA was motivated by plaintiff's sex in acting to terminate her employment. Specifically, with respect to board member Riccio, plaintiff has offered evidence of numerous instances in which he manifested his disdain for plaintiff's sex. He spoke to her in belittling terms such as "dearie," "sweetie," and "young girl," rather than with the respect that a male in the Executive Director position might have enjoyed. Indeed, it is difficult to imagine that Riccio would have called a male executive such names, nor is there any evidence suggesting that he did. Riccio's comment at the time of plaintiff's salary review, within eight months of her termination, that "a young girl like [plaintiff] had no business making that kind of money," DeWald Aff. (2/19/93) ¶ 29, certainly raises an inference that he considered plaintiff's sex in deciding how to vote on her salary and, perhaps, her ultimate employment status.

█ Of course, Riccio was just one member of the board and, as discussed above, he did not have individual authority to terminate plaintiff's employment. Still, in reviewing the AHA's corporate liability, the court is obliged to examine the motivation of individual board members in determining whether the corporation as a whole acted with an impermissible motive. *See Barbano v. Madison Cty.*, 922 F.2d 139, 143–44 (2d Cir.1990) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). In *Barbano*, the Second Circuit found that a board improperly relied upon a discriminatory recommendation in deciding to hire a male job applicant over an arguably more qualified female. *Id.* Although there was no evidence that the board itself was impermissibly motivated, the committee which submitted the recommendation was so plagued with discriminatory motive that the motive was necessarily imputed to the board, the board's good faith notwithstanding. *Id.; cf. North*, 844 F.2d at 407–08 (finding that board did not violate Title VII because it did not consider supervisor's discriminatory motive when deciding to terminate plaintiff's position).

There exists a factual dispute as to whether Riccio's allegedly impermissible motive

---

**11.** Since the individually-named defendants are entitled to summary judgment on grounds that they were not plaintiff's employer within the meaning of Title VII, the court need not address defendants' alternative argument that summary judgment is warranted due to plaintiff's alleged failure to exhaust her administrative remedies as against the individually-named defendants.

tainted the AHA board, as well. The uncertainty as to the board's underlying motivation is magnified by plaintiff's additional evidence concerning the motive that drove the actions of board member Orsini. As mentioned above, Orsini justified her vote to terminate plaintiff's employment when she referred to tenants' concerns that they "needed a man or someone with more experience" for the Executive Director position. *See* Def. exh. "H"; DeWald Aff. ¶ 30. This evidence of Riccio's and Orsini's bias, coupled with the evidence of the leverage that these two members held against two other voting board members, *see supra* p. 97, shows the existence of a factual dispute as to whether the board as a whole was influenced by Riccio's and Orsini's allegedly discriminatory motives in voting to terminate plaintiff's employment.

The AHA asserts that it is entitled to summary judgment because plaintiff has not proffered sufficient evidence to suggest the existence of a factual dispute as to whether its decision to terminate her employment was motivated by plaintiff's sex. The AHA's primary argument is that plaintiff's termination resulted from a bitter political and personal dispute between her and certain board members. While these disputes (and plaintiff's resulting termination) may have been unfortunate, contends the AHA, they do not implicate Title VII. In reviewing the AHA's arguments, however, the court is reminded that plaintiff need not *prove* at this pre-trial stage that the AHA was unlawfully motivated; rather, she need only present the court with some evidence that places the AHA's motivation into factual dispute. *E.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). While it is true that plaintiff, in presenting evidence that reveals the existence of a factual dispute, must do more than simply show a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), the Second Circuit has instructed that courts reviewing summary judgment motions in discrimination suits such as the present must also consider plaintiff's natural inability to present on paper convincing evidence of motivation. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). The court explained:

> An employer who discriminates is unlikely to leave a "smoking gun," such as a note in an employee's personnel file, attesting to a discriminatory intent. A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence. *Consequently, . . . where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate.*

*Id.* at 533 (emphasis added) (citations omitted).

The court candidly acknowledges that plaintiff's evidence of Riccio's and Orsini's influence over a majority of the board may not appear strong, but hastens to note that the credibility of plaintiff's evidence at this stage of the proceedings is irrelevant. *See National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989) (court may not consider credibility of evidence at summary judgment stage); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356 (all evidence must be viewed in a light favoring the non-moving party). Plaintiff has unquestionably shown the existence of a factual dispute as to (1) whether Riccio and Orsini were impermissibly motivated by plaintiff's sex in voting to terminate her employment, and if so, (2) whether Riccio's and Orsini's sex-based bias influenced other AHA board members, such that their bias resulted in the termination of plaintiff's employment. Since plaintiff has produced sufficient evidence to create a factual dispute as to these issues, summary judgment of her Title VII claim against the AHA is inappropriate.

#### (c) Retroactivity of Civil Rights Act of 1991

█ The parties next argue over whether the Civil Rights Act of 1991, Pub L. No. 102–166, 105 Stat. 1071 (1991) (the "Act"), applies retroactively to plaintiff's claims, which were filed prior to promulgation of the Act. The inquiry is pertinent because the Act, if applicable, would entitle plaintiff to a jury trial for her Title VII claims and allow her to collect

compensatory damages in the event that she prevails on those claims. Absent retroactive application of the Act, however, plaintiff would be entitled to neither a jury trial nor monetary damages for her Title VII claims.

As the court apprised the parties at oral argument, both the Second Circuit and this court have definitively ruled on the retroactivity issue, both concluding that the Act applies prospectively only. *See Butts v. City of New York*, 990 F.2d 1397 (2d Cir.1993); *McLaughlin v. Governor's Office of Employee Relations*, 784 F.Supp. 961 (N.D.N.Y. 1992). The effect of these rulings is that this plaintiff cannot benefit from retroactive application of the Act. While it is true that the Supreme Court has granted certiorari to hear this issue in two cases, *Harris v. Roadway Express*, 973 F.2d 490 (6th Cir.1992), *cert. granted in part sub nom., Landgraf v. USI Film Prods.*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *Landgraf v. USI Film Prods.*, 968 F.2d 427 (5th Cir. 1992), *cert. granted in part*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993), this court remains bound by the holding in *Butts* unless the Supreme Court or an *en banc* panel of the Second Circuit reaches a contrary result on the retroactivity issue. *Wisdom v. Intrepid Sea–Air Space Museum*, 993 F.2d 5, 8 (2d Cir.1993) (as amended). This court therefore follows the ruling in *Butts*, and reaffirms its holding in *McLaughlin*, that the Act does not apply retroactively. The parties are referred to those decisions for the rationale supporting this conclusion.

### B. Motion in limine

The AHA argues *in limine* that plaintiff should be precluded from presenting at trial the testimony of former AHA attorney William Moore. Although he is no longer AHA's counsel, Moore was apparently present at all of the relevant board meetings in his capacity as AHA's counsel and, if permitted, would likely attest to comments made by various board members at those meetings. The AHA objects on grounds that Moore was the AHA's lawyer at the time of the meetings and, therefore, should not be called to testify against his own client. Plaintiff's counsel responds that he will ask Moore questions

relating only to statements that Moore heard uttered in public, not those statements that amount to privileged communications. That is to say, plaintiff intends to produce Moore not in his capacity as AHA's lawyer but rather in his capacity as a witness to comments that were stated at public meetings. Furthermore, plaintiff's counsel assures the court that Moore will not be asked questions relating to confidential communications or work product.

■ The court concludes that Moore's testimony is competent insofar as it relates to comments made by AHA board members at public meetings. These comments fall outside the realm of the attorney-client privilege, and Moore's testimony is intended strictly to relay factual events that he observed. This is perhaps most clearly evidenced by the fact that if Moore had not attended the meetings, then he presumably would not be called as a witness. The admission of Moore's testimony would not be inconsistent with the attorney-client privilege, as the events to which Moore would be testifying were already in the public realm. *See Grady v. United States*, 559 F.Supp. 30, 32 (E.D.Mo.), *aff'd*, 715 F.2d 402 (8th Cir.1983); *see also* N.Y.Code of Professional Responsibility DR 4–101(B) (prohibits attorney's disclosure of "confidences or secrets"). Accordingly, the AHA's motion to preclude the testimony of attorney Moore is denied.

### III. CONCLUSION

Defendants' motion for summary judgment is granted as to plaintiff's claims arising under the New York Executive Law. To the extent that plaintiff seeks relief pursuant to the ADEA, defendants' motion for summary judgment is granted as to those claims, as well. Summary judgment is also granted as to plaintiff's Title VII claims against Riccio, Page, Orsini, and Rivera. Summary judgment is denied as to plaintiff's Title VII claims against the AHA.

In light of these rulings, the case shall proceed to a non-jury trial on plaintiff's Title VII claims against the AHA. Defendants' motion *in limine* to preclude certain testimo-

ny is denied, subject to objections made at the time the testimony is presented.

IT IS SO ORDERED.