Stanley COHEN, Gerald A. Garfinkle, Eastern Artists and Drafting Materials, Inc., Plaintiffs–Appellants,

v.

Elliott KOENIG, and Robert Koenig, Defendants–Appellees.

No. 1375, Docket 93–9175.

United States Court of Appeals, Second Circuit.

Argued March 28, 1994.

Decided June 20, 1994.

Gary J. Langer, New York City (Deborah A. Sullivan, Forest Hills, NY, on the brief), for plaintiffs-appellants.

Regina A. Matejka, New York City (Edwards & Angell, on the brief), for defendants-appellees.

Before: TIMBERS, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs Stanley Cohen, Gerald A. Garfinkle, and Eastern Artists and Drafting Materials, Inc. ("Eastern"), appeal from a judgment entered in the United States District Court for the Southern District of New York, Loretta A. Preska, *Judge,* dismissing their suit seeking damages against defendants Elliott and Robert Koenig (the "Koenigs") for fraud in connection with the Koenigs' purchase of the assets of Eastern. The district court dismissed the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. On appeal, plaintiffs contend that these rulings were erroneous or that the court should at least have allowed them to replead. We conclude that the dismissal was erroneous, and we therefore vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Prior to June 1, 1989, Cohen and Garfinkle were the sole officers, directors, and shareholders of Eastern. The Koenigs were officers, directors, majority shareholders, and employees of Koenig Corporation, a company engaged in selling artist and drafting supplies and materials. Koenig Corporation had a number of subsidiaries, including Koenig Artist Supplies, Inc. ("KAS"), Koenig Management Services, Inc. d/b/a Koenig Art Emporium ("KMS"), and Art Management Services, Inc., (collectively, the "Koenig Group").

In early 1989, the Koenigs sought to acquire the assets of Eastern, which included various physical equipment, and the goodwill associated with Eastern's name. The Koenigs sought to make the purchase on credit; Cohen and Garfinkle requested cash. The transaction was consummated on June 1, 1989, in part on credit. Plaintiffs contend that Cohen and Garfinkle were induced to extend credit to the Koenigs because of fraudulent representations repeatedly made to them by the Koenigs during the 1989 negotiations. The amended complaint alleged the following misrepresentations.

### A. The Events as Alleged in the Amended Complaint

The Koenigs first proposed to acquire Eastern in a meeting held in Eastern's offices on February 24. At that meeting, Robert Koenig described the Koenig Group's sales, net income, and recent acquisitions. After the meeting, in an attempt to persuade Cohen and Garfinkle to extend them credit in connection with the proposed acquisition of Eastern, the Koenigs sent Cohen and Garfinkle financial statements for the companies in the Koenig Group for the fiscal years ended June 30, 1987, and June 30, 1988 (collectively "Financial Statement").

Thereafter, in a meeting on April 1, Elliott and Robert "represented to the plaintiffs that the Financial Statement was certified and set forth a true and accurate depiction of the sound financial condition of the [Koenig Group]." (Amended Complaint ¶ 24.) The Koenigs also represented that "the financial condition had substantially improved for the year since the last period covered by the Financial Statement." (*Id.*) With respect to the year ended June 30, 1988, they represented that the value of the Koenig Group's "current assets, defined as assets reasonably expected to be realized in cash, sold, or consumed during the normal operating cycle of the business, was $2,270,096.00," that the value of its "property and equipment was $3,961,528.00," and that its "net income was $1,035,139.00." (*Id.*) The Koenigs also represented that the Koenig Group's net income "would be substantially greater for the year about to end on June 30, 1989." (*Id.*) In response to the insistence of Cohen and Garfinkle on an all-cash transaction or at least on personal guarantees from the Koenigs, the Koenigs repeated these representations at meetings held with plaintiffs on April 10,

May 17, and May 31, and again at the closing on June 1.

At the closing, in reliance on the Koenigs' repeated assurances as to the financial condition of the Koenig Group, Cohen and Garfinkle dropped their demands for an all-cash transaction and for the Koenigs' personal guarantees and agreed to a part-credit sale. Eastern's assets were sold to KMS for $2,194,000, with $1,550,000 paid in cash and the balance of $644,000 financed by $322,000 loans from Cohen and Garfinkle, respectively, to be repaid by KMS. In addition, Cohen entered into a four-year consulting agreement with KAS, pursuant to which he was to be paid a gross salary of $31,250 per year, and a two-year employment agreement with KMS, pursuant to which he was to be paid a base salary of $150,000 per year plus reimbursement for expenses of up to $18,000. Garfinkle entered into a four-year consulting agreement with KAS, pursuant to which he was to be paid a gross salary of $31,250 per year, and he entered into a seven-month employment agreement with KMS.

Cohen and Garfinkle later learned that the Koenig Group's June 30, 1988 financial statements given to plaintiffs prior to the April 1, 1989 meeting, as well as the Koenigs' repeated representations throughout the spring of 1989 that those statements were accurate, were materially false in the following respects: (1) as of June 30, 1988, the Koenig Group's current assets had a value of $1,730,096, not $2,270,096 as represented; (2) as of June 30, 1988, the Koenig Group's property and equipment had a value of $3,311,528, not $3,961,528 as represented; (3) as of June 30, 1988, the Koenig Group's net income was $326,139, not $1,035,139 as represented; and (4) for the year ending June 30, 1989, the Koenig Group's net income was not substantially greater than the $1,035,139 figure that the Koenigs had presented as the fiscal 1988 net income; rather, the 1989 net income was only $107,251, a small fraction of even the actual 1988 net income.

The complaint alleged that at the time the misrepresentations were made by the Koenigs, plaintiffs believed the representations, did not know they were false, and relied on them in lending money for the Koenig Group's purchase of the assets of Eastern and in giving up their profitable interests and positions in Eastern to accept employment with the Koenig Group. The complaint alleged that the Koenigs, who were officers, directors, and majority shareholders of the Koenig Group, were hands-on managers active in the Koenig Group's day-to-day operations, and that the Koenigs knew their representations to be false but made them with intent to deceive and defraud plaintiffs and to induce Cohen and Garfinkle to, *inter alia*, extend credit for the transaction.

In March 1991, KMS, KAS, and Koenig Corp. filed for bankruptcy. Cohen and Garfinkle were unsecured creditors in those proceedings. There were insufficient assets to satisfy the claims of even the secured creditors, and ultimately all of the companies in the Koenig Group were liquidated.

### B. The Proceedings in the District Court

Plaintiffs commenced this action in 1992, alleging fraud and misrepresentation in connection with the Koenigs' purchase of Eastern's assets. The Koenigs moved to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b). The district court granted the motion but granted plaintiffs leave to replead. Plaintiffs filed their amended complaint, the principal allegations of which are described above.

The Koenigs moved pursuant to Rules 12(b)(6) and 9(b) to dismiss the amended complaint. Without elaboration, the district court granted the motions to dismiss "[f]or the reasons stated in defendants' well-argued memoranda of law." (Order dated August 20, 1993.) The court also denied plaintiffs "[f]urther leave to replead ... in view of plaintiffs' access to discovery and prior opportunity to replead fraud with greater specificity." (*Id.*)

This appeal followed. For the reasons below, we reverse.

## II. DISCUSSION

### A. The Rule 12(b)(6) Dismissal

When ruling on a motion pursuant to Rule 12(b)(6) to dismiss for failure to state

a claim upon which relief may be granted, the court must accept the material facts alleged in the complaint as true. *See, e.g., Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1733, 12 L.Ed.2d 1030 (1964) (per curiam). It must not dismiss the action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991).

■ To prevail on a fraudulent misrepresentation claim under New York law, which the parties agree governs this diversity action, a plaintiff must show "(1) that [the defendant] made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by [the defendant] (5) that was made for the purpose of inducing [the plaintiff] to rely on it (6) that [the plaintiff] rightfully did so rely (7) in ignorance of its falsity (8) to his injury." *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987); *see also Brown v. Lockwood,* 76 A.D.2d 721, 730, 432 N.Y.S.2d 186, 193 (2d Dep't 1980). The failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made. *See Murray v. Xerox Corp.,* 811 F.2d at 121; *Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 210, 411 N.Y.S.2d 66, 68 (4th Dep't 1978). Similarly, statements will not form the basis of a fraud claim when they are mere "puffery" or are opinions as to future events. *See, e.g., Quasha v. American Natural Beverage Corp.,* 171 A.D.2d 537, 537, 567 N.Y.S.2d 257, 257 (1st Dep't 1991). Nonetheless, a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud. *See, e.g., Goldman v. Belden,* 754 F.2d 1059, 1068–69 (2d Cir.1985); *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 164 (2d Cir.1980) ("Liability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects in the current year."); *Marx v. Com-*

*puter Sciences Corp.,* 507 F.2d 485, 488–90 (9th Cir.1974) (statement that company "expects to exceed the revenue and profit forecast" is an actionable statement for securities fraud).

■ In the present case, accepting as true the amended complaint's material allegations, we conclude that plaintiffs have pleaded facts sufficient to state a fraud claim under New York law. The amended complaint alleged that with respect to the fiscal year 1988, the Koenigs repeatedly overstated, *inter alia,* the Koenig Group's net income, the value of its current assets, and the value of its property and equipment. These plainly were representations as to material facts. The amended complaint alleged that the representations were false, that the Koenigs were in a position to know they were false, and that the Koenigs did in fact know they were false. The amended complaint alleged that the Koenigs' misrepresentations were intentionally made in order to induce Cohen and Garfinkle to extend credit to the Koenigs, and that the misrepresentations were innocently relied upon by plaintiffs. In light of the Koenig Group's bankruptcy, Cohen and Garfinkle lost at least so much of the amounts that they had been persuaded to lend as remained unpaid.

■ The amended complaint also alleged that less than 30 days before the end of the 1989 fiscal year, the Koenigs represented that the Koenig Group's 1989 net income would significantly exceed $1,035,139 and that in fact the 1989 net income was only $107,251. Though technically these statements concerned "future" performance, since the year in question was ongoing, they may nonetheless be actionable. The Koenigs repeated the representations as to 1989 net income sufficiently close to the end of that year that plaintiffs could well prove that the Koenigs knew the represented level of performance, in light of the Koenig Group's actual performance during the prior 11 months, could not be achieved.

In sum, we think it plain that the amended complaint stated a claim upon which relief can be granted for fraud. The Koenigs' reliance on *Triangle Underwriters, Inc. v.*

*Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979) (*"Triangle"*), for the contrary proposition is misplaced. In that case we held that although a plaintiff is not allowed to "dress up" a breach-of-contract claim as a fraud claim, a valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract. *See id.* at 746–47 (upholding claim "alleg[ing] ... false representations, made before there ever was a contract between the parties, which led [plaintiff] to enter into it[,] ... [*i.e.,*] fraud that was extraneous to the contract, rather than a fraudulent non-performance of the contract itself"); *id.* at 748 (distinguishing allegations of "misrepresentations and concealments made after the parties had entered into a contractual relationship with each other"). Thus, far from supporting defendants' position, *Triangle* supports plaintiffs' position.

■ Nor is there merit in the Koenigs' contention that the amended complaint was properly dismissed on the basis that under New York law the officers and directors of a corporation cannot be held individually liable for their company's obligations. Though such individuals are not generally liable for their corporation's debts or its breach of a contract, *see, e.g., We're Associates Co. v. Cohen, Stracher & Bloom, P.C.,* 65 N.Y.2d 148, 151, 490 N.Y.S.2d 743, 745, 480 N.E.2d 357, 358–59 (1985), "[o]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it ...," *People v. Apple Health & Sports Clubs, Ltd.,* 80 N.Y.2d 803, 807, 587 N.Y.S.2d 279, 282, 599 N.E.2d 683, 686 (1992); *see also Marine Midland Bank v. John E. Russo Produce Co.,* 50 N.Y.2d 31, 44, 427 N.Y.S.2d 961, 968–69, 405 N.E.2d 205, 211–12 (1980); *A–1 Check Cashing Service, Inc. v. Goodman,* 148 A.D.2d 482, 482, 538 N.Y.S.2d 830, 831 (2d Dep't1989) ("A corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business...."). Since the amended complaint alleged that the Koenigs themselves made misrepresentations, their positions as Koenig Group officers and directors afforded no basis for dismissal.

We conclude that the dismissal of the amended complaint pursuant to Rule 12(b)(6) was error.

*B. The Rule 9(b) Dismissal*

■ The district court also dismissed plaintiffs' claims under Rule 9(b). That Rule provides that

[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). In the present case, there can be no doubt that plaintiffs complied with the Rule's requirement that the complaint plead with particularity the facts and circumstances constituting the fraud itself. In their amended complaint, plaintiffs set out the representations on which they relied, stating both what financial figures they were given and what they alleged the true financial figures were. Plaintiffs specified who was alleged to have made the false statements; and they stated the precise dates and places of the meetings at which they alleged the fraudulent statements were made.

■ With respect to scienter, this Court has stated that, though specificity is required with respect to the statements that are alleged to have been fraudulent, the language of Rule 9(b) means that " 'great specificity [is] not required with respect to ... allegations of ... scienter.' " *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987) (*"Fluor"*) (quoting *Goldman v. Belden,* 754 F.2d at 1070 (ellipses in *Fluor* )). "Great specificity" as to scienter is not required because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Fluor,* 808 F.2d at 962; *see also Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Nonetheless, plaintiffs have the "burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter." *Fluor,* 808 F.2d at 962. Such a basis may be shown through allegations of a motive to deceive

and access to accurate information. *See, e.g., Turkish v. Kasenetz,* 27 F.3d 23, 28–29 (2d Cir.1994).

In *Fluor,* for example, we held that the plaintiffs had failed to plead a sufficient factual basis for their general scienter allegations where the complaint proffered no plausible reason as to why the defendant would have had any intent to deceive the plaintiff class in the manner alleged. *See also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128–31 (2d Cir.1994) (scienter not adequately pleaded through broad and conclusory allegations that did not give rise to strong inference that defendants had knowledge of or acted in reckless disregard of the truth as to the adequacy of loan reserves). In contrast, in *Goldman v. Belden,* we held that a complaint met the scienter requirements of Rule 9(b) by, *inter alia,* "alleg[ing] that the defendants had or had access to the withheld information," and implying that "the alleged failure to qualify the bullish statements was intended to permit individual defendants to profit from an inflated market price before the truth became known." 754 F.2d at 1070. Similarly, in *Turkish v. Kasenetz,* 27 F.3d at 28–29, we held that scienter was sufficiently pleaded by the complaint's allegations (a) that the defendants, as owners of a controlling interest in the business, had a clear opportunity to engage in the alleged fraud, and (b) that their motive to commit fraud was their desire to avoid making certain payments.

Within this framework, we view the amended complaint in the present case as sufficient to satisfy Rule 9(b)'s requirements as to scienter. First, sufficient facts were pleaded to suggest that plaintiffs may be able to prove that defendants more likely than not knew that their financial representations were false. For example, the amended complaint included allegations that the Koenigs were officers, directors, and majority shareholders of the Koenig Group, that they "were hands on managers active in [its] day to day operations," and that they were "fully familiar with all aspects of [its] businesses and

financial conditions and operations." (Amended Complaint ¶ 3.)

Second, the amended complaint spelled out circumstances from which it could easily be inferred that the Koenigs had a motive to make false representations. It alleged that the Koenigs were eager to acquire Eastern's assets, that Cohen and Garfinkle demanded an all-cash deal and/or personal guarantees from the Koenigs, and that the Koenigs strongly desired to make the purchase on credit. It hardly requires a stretch of the imagination to infer that the would-be purchasers in such circumstances had a motive to paint a far rosier financial picture than actually existed in order to induce Cohen and Garfinkle to part with a sizeable portion of their assets in exchange for a note.

We conclude that the amended complaint satisfied the requirements of Rule 9(b).

## CONCLUSION

For the foregoing reasons, the judgment dismissing the amended complaint is vacated, and the matter is remanded for further proceedings.