Lone **THANNING**, Plaintiff,

v.

Thomas S. **GULOTTA**, as county executive of Nassau County, and Leslie Lukash, individually and as Chief Medical Examiner of the County of Nassau, Defendants.

No. CV 94–3354.

United States District Court, E.D. New York.

Sept. 19, 1995.

Levitan & Pardes by Katherine Levitan, Mineola, NY, for Plaintiff.

Bee & Eisman by Robert G. Lipp, Mineola, NY, for Defendants.

*MEMORANDUM & ORDER*

WEXLER, District Judge.

Plaintiff Lone Thanning ("plaintiff" or "Thanning") brought the above-captioned civil rights action against defendants Thomas S. Gulotta ("Gulotta"), in his official capacity as County Executive for Nassau County (the "County"), and Leslie Lukash ("Lukash"), in both his individual capacity and official capacity as the County's medical examiner (collectively, "defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"), and state and common law. Presently before the Court is defendants' motion, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for an order dismissing portions of the complaint.

## I. *THE COMPLAINT*

The complaint states that in July 1986 Thanning was employed by the County in the Office of the Medical Examiner (the "Office") as a Fellow Medical Examiner–Forensic Pathologist. One year later, she was promoted to the position of Deputy Medical Examiner–Forensic Pathologist. The complaint also states that Thanning's employment was terminated on August 16, 1993. Events taking place during the period between July 1986 and August 1993—events which allegedly led to Thanning's termination—are the subject matter of this lawsuit.

Thanning, who is a woman, alleges that during the course of her employment in the Office she was subjected to a persistent course of unwelcome sexual harassment. The perpetrator, she alleges, was Lukash, the County's Chief Medical Examiner. and Thanning's direct superior. The complaint describes the sexual harassment occurring during the period as follows:

(1) Lukash touched and fondled Thanning;

(2) Lukash posed questions to Thanning about her sexual and social life;

(3) Lukash frequently made comments to Thanning, such as: " 'Don't screw the homicide cops' " and " 'Don't screw the attorneys you work with' ";

(4) when Thanning "refused to respond" to Lukash's advances, Lukash called Thanning a lesbian and told other employees at the Office that Thanning was a lesbian;

(5) also in retaliation, Lukash told employees at the Office that, because Thanning was a lesbian, "she was a 'waste of a good screw' ";

(6) Lukash also told employees at the Office that "it was a 'waste of a good pussy' ";

(7) at a staff meeting, Lukash "looked directly at plaintiff for several seconds and announced that he knew of an opening for a 'homosexual forensic pathologist.' "

Aside from having to cope with the harassment itself, Thanning alleges that, because she rejected Lukash's sexual advances, Lukash refused to give her an increase in seniority in September 1991, and decided to terminate her employment on August 16, 1993. As a result, Thanning alleges, she missed out on salary increases and promotions; she lost esteem in the professional community; and she suffered physical injuries and severe emotional distress and pain.

Thanning alleges that Gulotta, the County Executive, knew or should have known that a hostile and abusive work environment existed in the Office during the period, but failed to take action.

On October 14, 1993, Thanning filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was subjected to unwanted sexual advances of a verbal and physical nature and that she was removed from her position with the County because she refused to submit to the sexual advances. The EEOC issued a right to sue letter on April 29, 1994.

Thanning brought this action by summons and complaint filed July 15, 1994. The complaint advances four Title VII claims. The first and second, asserted against Lukash, are for sexual harassment under the theories of *quid pro quo* and hostile work environment, respectively. The third and fourth charge Gulotta—and thereby the County—with responsibility for Lukash's conduct. Thanning also brings a fifth claim, against Lukash and Gulotta, for violations of the New York State human rights law, Executive Law § 296 *et seq.,* and a sixth claim, against Lukash, for intentional infliction of emotional distress. She seeks $1 million in damages on each of her six claims.

## II. *DISCUSSION*

██ In determining whether to grant a motion to dismiss for failure to state a claim, a court must presume the material factual allegations of the complaint are true and all reasonable inferences are to be made in favor of the non-moving party. *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). Allegations in the complaint are to be liberally construed.

"The court must not dismiss 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

 Sexual harassment in the workplace is a form of discrimination on the basis of sex that is prohibited by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1); *see also Harris v. Forklift Sys., Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). A plaintiff seeking relief for sexual harassment may proceed under two theories: *quid pro quo,* and hostile work environment. *Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.1994) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986) and *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992)). In order to state a claim for *quid pro quo* harassment, a plaintiff must sufficiently allege that "she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Id.* In order to state a claim for hostile work environment, a plaintiff must sufficiently allege that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment." *Id.* (quoting *Harris,* —— U.S. at ——, 114 S.Ct. at 370 and *Meritor,* 477 U.S. at 65, 67, 106 S.Ct. at 2404–2405, 2405) (internal quotations omitted). In order to establish a basis for employer liability in a case where a supervisor is charged with creating the hostile work environment, a plaintiff must sufficiently allege that "the supervisor use[d] his actual or apparent authority to further the harassment, or [that] he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." *Id.* at 780.

The complaint in the instant case presents sexual harassment claims based on both theories. Defendants' motion to dismiss does not attack the sufficiency of these claims against the County; rather, it seeks an order that would: (1) dismiss the Title VII claims asserted against Lukash in his individual capacity; (2) bar recovery of compensatory or punitive damages under Title VII for alleged discriminatory conduct antedating the enactment of the Civil Rights Act of 1991 (the "1991 Act"); and (3) bar recovery of damages, of any type, under Title VII for discriminatory conduct occurring outside the applicable statute of limitation. In addition, the motion seeks dismissal of the emotional distress claim for failure to state a cause of action.

## A. *Individual Liability Under Title VII*

██ Title VII creates a cause of action against an "employer" who has engaged in certain discriminatory conduct. The statute defines an employer as "a person ... who has fifteen or more employees.... and any agent of such person." 42 U.S.C. § 2000e(b). Defendants concede that the County is an employer under this definition, but argue that Lukash is not. They contend that the Title VII claims brought against Lukash in his individual capacity must be dismissed because Lukash, an employee of the County, is not subject to suit under Title VII. Plaintiff acknowledges that Lukash is an employee, but insists that he is the type of supervisory employee who comes within the reach of Title VII as an "agent." In essence, plaintiff argues that Lukash possessed sufficient decisionmaking authority as the County's Chief Medical Examiner to himself qualify as an employer under Title VII.

Plaintiff's position finds support in a line of decisions rendered by district courts in the Second Circuit, which have found certain supervisory employees individually liable for their discriminatory acts. *See, e.g., Dirschel v. Speck,* 94 Civ. 502, 1994 WL 330262 (S.D.N.Y. July 8, 1994); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172 (S.D.N.Y.1992); *Cheng v. Tams Consultants, Inc.,* 90 Civ. 5832, 1991 WL 79198 (S.D.N.Y. May 2, 1991); *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y.1985), *aff'd,* 907 F.2d 144 (2d Cir. 1990). The Court of Appeals for the Second Circuit has not addressed the issue, but most circuit courts have held that Title VII imposes no liability on individual employees. *See, e.g., Grant v. Lone Star Co.,* 21 F.3d 649 (5th

Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991); *accord Coraggio v. Time Inc. Magazine Co.*, 94 Civ. 5429, 1995 WL 242047 (S.D.N.Y. April 26, 1995); *DeWald v. Amsterdam Hous. Auth.*, 823 F.Supp. 94 (N.D.N.Y.1993); *Allen v. City of Yonkers*, 803 F.Supp. 679 (S.D.N.Y.1992).

 Interpreting the agent provision to establish a cause of action against a high-ranking, supervisory employee in his individual capacity comports with neither the logic nor the intent underlying Title VII. In holding that Title VII provides no basis for individual liability, the Ninth Circuit reasoned that the agent provision simply incorporates respondeat superior liability into the statute. *See Maxwell's Int'l*, 991 F.2d at 587. Indeed, the Second Circuit, in justifying imposition of liability on employers for discriminatory acts of their employees, explained that "[t]he supervisor is deemed to act on behalf of the employer" and that "[f]rom the perspective of the [plaintiff-employee], the supervisor and the employer merge into a single entity." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992). The purpose of the agent provision is to provide a mechanism for imposing respondeat superior liability on employers for the acts of their employees. The provision allows a plaintiff to bring a suit against her employer and the accused supervisor, in his *official* capacity.

The framework of the statute supports this view. Individual liability is not consistent with the damages scheme incorporated into Title VII by the 1991 Act. The 1991 Act imposed an adjustable ceiling on damages, linked to the size of the employer. It did not address individual liability, much less limit the amount of damages recoverable against an individual. "[I]f Congress had envisioned individual liability under Title VII ..., it would have included individuals in this litany of limitations." *Maxwell's Int'l*, 991 F.2d at 588. Moreover, as noted by the Fifth Circuit, Congress proscribed conduct by "persons" in 42 U.S.C. §§ 1981, 1983, 1985, and 1986, but prohibited conduct by "employers" in Title VII. *Grant v. Lone Star Co.*, 21 F.3d at 653.

For the above reasons, defendants motion is granted insofar as it seeks dismissal of the Title VII claims brought against Lukash in his individual capacity.

**B. Events Antedating Enactment of the 1991 Act**

 By their motion, defendants also seek to bar recovery of compensatory and/or punitive damages for injuries antedating enactment of the 1991 Act. It is well settled that the damages provisions in the 1991 Act do not apply to "events antedating its enactment." *Landgraf v. USI Film Prods.*, —— U.S. ——, ——, 114 S.Ct. 1483, 1506, 128 L.Ed.2d 229 (1994). The 1991 Act was signed into law on November 21, 1991. In the instant case, plaintiff seeks Title VII recovery under two theories: *quid pro quo* and hostile work environment. Insofar has plaintiff's *quid pro quo* claim seeks redress for her dismissal from the Office, which occurred in August 1993, she can recover damages under the 1991 Act. She may not recover under the 1991 Act, however, for injuries resulting from the improper denial of seniority, which is alleged to have occurred in September 1991. Plaintiff's hostile environment claim alleges that she was subject to unwelcome sexual harassment between July 1986 and August 1993. Whether plaintiff's injury occurred before or after the enactment of the 1991 Act is a question better left for a later stage of the litigation when the record is more complete.

**C. Statute of Limitations**

 A Title VII plaintiff must file a charge with the EEOC within 300 days of alleged unlawful conduct. 42 U.S.C. § 2000e–5(e)(1). Plaintiff in the instant case filed a charge with the EEOC on October 14, 1993. As such, plaintiff cannot recover for discriminatory conduct occurring more than 300 days before that date. Although plaintiff's termination occurred within the permissible time period, the denial of seniority occurred outside the period. Thus, any Title

VII claims based on the denial of seniority are time barred. Plaintiff's complaint does not contain allegations sufficient to warrant application of the "continuous violation" exception to the Title VII statute of limitations. *See Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1404 (2d Cir.1993) (the exception "applies only where discrimination is accomplished through a specific official policy or mechanism").

### D. *Emotional Distress Claim*

 Defendants motion also seeks dismissal of the intentional infliction of emotional distress claim brought against Lukash. To state a cause of action for intentional infliction of emotional distress, a plaintiff must satisfy the test set out in the Restatement (Second) of Torts and adopted by the New York State Court of Appeals, which specifies that a defendant is liable only if "by extreme and outrageous conduct [he] intentionally or recklessly causes severe emotional distress to another." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 303, 448 N.E.2d 86, 90 (N.Y. 1983); *see Coraggio*, No. 94 Civ. 5429, 1995 WL 242047, at *6.

The "extreme and outrageous conduct" element can be satisfied by showing that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy*, 461 N.Y.S.2d at 303, 448 N.E.2d at 90. Needless to say, the standard is an exceedingly difficult one to meet, but, accepting the allegations in the complaint as true, the Court determines that plaintiff has done just that. According to the complaint, Lukash touched and fondled Thanning and made inquiries into her sexual and social life. When Thanning did not respond, she was pestered with insults. These insults, uttered by Thanning's supervisor, sometimes within earshot of her co-workers, "go beyond all possible bounds of decency" and are "utterly intolerable in a civilized community." As such, plaintiff has stated a claim for intentional infliction of emotional distress against Lukash.

### III. *CONCLUSION*

For the above reasons, defendants' motion is granted in part and denied in part. The motion is granted insofar as it seeks to dismiss the Title VII claims brought against Lukash in his individual capacity, and bar Title VII recovery for injuries resulting from the improper denial of seniority. The motion is denied in all other respects.

SO ORDERED.