11-1169-cv
Kawache v. United States

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of March, two thousand twelve.

PRESENT:  AMALYA L. KEARSE
          JOHN M. WALKER, JR.
          GERARD E. LYNCH,
                    *Circuit Judges.*

-------------------------------------------------------------------

MIRIAM KAWACHE,
                    *Plaintiff-Appellant*,

          v.                                    No. 11-1169-cv

UNITED STATES OF AMERICA,
                    *Defendant-Appellee.*

-------------------------------------------------------------------

FOR APPELLANT:      ISAAC TAMIR, Tamir Law Group, PC, New York, New York.

FOR APPELLEE:       TIANA A. DEMAS (Varuni Nelson, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Serena Kawache ("Ms. Kawache") and Adam Kawache ("Mr. Kawache") commenced this action in the name of their minor child Miriam Kawache ("Miriam" or "appellant") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 et seq. ("FTCA") in the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *J.*). Appellant sought damages from the United States for the alleged medical malpractice of its deemed employee, Ahmad M. Jaber, M.D. Specifically, appellant claims that Dr. Jaber deviated from the applicable standard of care when confronted at Miriam's delivery with Miriam's condition of shoulder dystocia, a delivery difficulty wherein the infant's shoulders become trapped between the mother's pubic and tail bones. The parties agree that the appropriate obstetric response to shoulder dystocia is for the physician to dislodge the shoulders by using a technique known as the McRoberts maneuver and by applying supra-pubic pressure, but that the application of excessive lateral traction to the infant's head prior to the use of the McRoberts maneuver and application of supra-pubic pressure is not standard and can cause serious injury. Appellant contended at trial that Dr. Jaber did not apply the appropriate maneuvers and instead used excess lateral traction, thus causing Miriam's permanent brachial plexus injury, which will permanently limit the mobility of her right arm and shoulder.

2

After a bench trial pursuant to Fed. R. Civ. Proc. 52(a), the district court made extensive findings of fact and conclusions of law, concluding that the appellant had failed to show (1) that Dr. Jaber had failed to use the appropriate medical maneuvers in response to Miriam's shoulder dystocia, and (2) that Dr. Jaber's conduct caused Miriam's injury. We affirm the district court's decision, and assume familiarity with the remaining underlying facts and procedural history of the case.

On appeal, the appellant challenges not the district court's legal conclusions, but its factual findings. The parties agree that New York law applies, and that the law governing medical malpractice under the FTCA is well established. See Molzof v. United States, 502 U.S. 301, 305 (1992) (describing the application of the FTCA to medical malpractice cases); Berger v. Becker, 709 N.Y.S.2d 418, 418 (2d Dep't 2000) (describing the legal burden that medical malpractice plaintiffs bear). We review a district court's factual findings after a bench trial for clear error, and reverse only when, after reviewing the evidence in its entirety, we are "left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). As we have previously noted:

> In reviewing findings for clear error, we are not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences. Even if the appellate court might have weighed the evidence differently, it may not overturn findings that are not clearly erroneous. The weight of the evidence is not a ground for reversal on appeal, and the fact that there may have been evidence to support an inference contrary to that drawn by the trial court does not mean that the findings are clearly

3

> erroneous. The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact . . . .

Ceraso v. Motiva Enterprises, LLC, 326 F.3d 303, 316-17 (2d Cir. 2003) (citations omitted).

Appellant makes three factual arguments: first, that the district court clearly erred in crediting Dr. Jaber's testimony because the evidence overwhelmingly favors the inference that Dr. Jaber fabricated medical records and provided false testimony during the bench trial; second, that the district court's failure to fully credit Ms. Kawache's mother, Rosanne Sinti, was clearly erroneous, as her testimony was especially likely to be accurate and was inconsistent with the conclusion that Dr. Jaber performed the appropriate maneuvers when faced with Miriam's shoulder dystocia; and third, that the medical literature establishes that permanent brachial plexus injury almost always results from the delivering physician's failure to comport to the applicable standards of care.

None of these arguments survives the standard of review. Dr. Jaber's contemporaneous notes present creditable evidence that he performed both standard maneuvers in reaction to shoulder dystocia, and contemporaneous nurses' notes likewise create a plausible inference that other medical staff assisted in performing these maneuvers consistent with Dr. Jaber's testimony. That Dr. Jaber may have had a motive to falsify medical records or perjure himself does not demonstrate that he did do so. The district court was fully within its discretion to credit Dr. Jaber's medical records and

4

testimony, especially in light of the fact that the appellant presented no direct evidence to contradict him.

The argument that Sinti's testimony should have been given more weight similarly fails. The district court did not discredit Sinti's testimony, finding instead that it was for the most part consistent with Dr. Jaber's records and his testimony. Sinti testified that she saw none of the movement associated with the medical maneuvers that the parties agree should be performed when an infant presents shoulder dystocia. But the evidence permitted the district court to conclude that since Ms. Kawache was under a sterile drape, and the maneuvers in question were performed beneath that drape, the precise actions taken in response to shoulder dystocia would not necessarily be observable to a non-expert who stood, as Sinti did, near the delivering mother's abdomen. Moreover, the district court reasonably found that Sinti's memory and ability to observe might have been compromised by stresses of the day: In addition to Miriam's birth, the Kawaches had on the same day a fire in their apartment, where Mr. Kawache and the Kawaches' older child remained during Miriam's delivery. The appellant's unsubstantiated assertion that "it is well known that stress promotes memory formation and recollection," even if it were true,[1] would not permit an appellate court to overturn the fact-finder's credibility determinations.

---

[1] But see State v. Henderson, 208 N.J. 208, 261 (2011) (summarizing social scientific evidence, in the context of eyewitness identification, for the proposition that "[e]ven under the best viewing conditions, high levels of stress can diminish an eyewitness' ability to recall.")

Finally, the appellant fails to demonstrate that the district court's thoughtful navigation of conflicting expert testimony was clearly erroneous. Appellant argues that the "medical literature . . . shows with near-certainty that Miriam's permanent brachial plexus injury could not have occurred other than by the application" of non-standard medical care. Appellant overstates the record evidence. Although appellant's experts – Stuart Edelberg, M.D., an obstetrician/gynecologist, and Greg Rosenn, M.D., a pediatric neurologist – did initially assert this conclusion, both retracted their assertions on cross-examination. Dr. Edelberg admitted that he had, in a similar litigation, allowed that brachial plexus injury can occur during the natural course of childbirth, and further admitted that such may have been true in Miriam's case. Dr. Rosenn, while forming the same opinion as to the cause of Miriam's injury, admitted that his medical expertise did not qualify him to reach such a conclusion, as his expertise as a neurologist involves only the diagnosis and treatment of these injuries, not the determination of their cause. He further admitted that it was "definitely possible" for a permanent brachial plexus injury to be caused by something other than extreme lateral traction. Given those concessions, it was entirely reasonable for the district court to reject the proffered conclusions of appellant's experts and to credit the contrary testimony of the defense experts.[2]

---

[2] Subsequent to the completion of briefing, appellant submitted as supplemental authority the Appellate Division's decision in Muhammad v. Fitzpatrick, 937 N.Y.S.2d 519 (4th Dep't 2012), arguing that Muhammad should guide our decision in this case. The argument is unavailing. Muhammad holds only that the state trial court did not err in excluding, on the record before it, expert testimony attributing a brachial plexus injury to the normal birthing process. State evidentiary decisions are not binding on this Court. In any event, appellant does not argue that the defense experts' testimony was inadmissible, but rather challenges the district court's decision to credit that evidence, which, as noted above, is reviewed for clear error. Thus, Muhammad does not bear on the issues presented by this appeal.

We have considered the appellant's remaining arguments, and find them to be without merit. The trial of this matter presented conflicting expert testimony and limited direct testimony as to what occurred in the delivery room. On this record, it was up to the finder of fact to decide whom to believe and what inferences to draw. We thus cannot fault the district court's conclusion that appellant failed to carry her burden of proof. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court