In Syposs, Judge Foschio recognized that although "the federal common law of privilege is applicable, and not state statutory privilege", in applying federal common law the court "should bear in mind the interests protected by a state-recognized privilege and may incorporate the privilege to the extent consistent with the federal policies implicated in a case". 179 F.R.D. at 409. Therefore, in deciding this motion I must first consider the State's interests underlying the peer review privilege, and then decide whether those interests are compatible with the federal policies implicated by the FTCA.
1. State Interests Underlying the Privilege
The purpose of New York's peer review privilege "is to enhance the objectivity of the review process and to assure that medical review committees may *350 frankly and objectively analyze the quality of health services rendered by hospitals .... By guaranteeing confidentiality to quality review and malpractice prevention procedures, this provision is designed to encourage thorough and candid peer review of physicians, and thereby improve the quality of medical care". Logue v. Velez, 92 N.Y.2d 13, 17, 677 N.Y.S.2d 6, 699 N.E.2d 365 (1998). See also Francis v. United States, 2011 WL 2224509, *6 (S.D.N.Y. 2011) ("the primary purpose of such a privilege [is] to encourage candor among medical staff by shielding the information from disclosure in medical malpractice suits").
Such interests "are as substantial as any that can be imagined: Candid and conscientious evaluation of clinical practices is a sine qua non of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations .... The only consequence in not recognizing the privilege is to require the plaintiff in this case to do what plaintiffs in medical malpractice cases are routinely required to do in all other cases, namely adduce proof independent of what occurred in the peer review process." Sevilla v. United States, 852 F.Supp.2d 1057, 1068-69 (N.D. Ill. 2012).
2. Federal Policies Implicated by the FTCA
In concluding that the peer review privilege should not be applied in FTCA cases, Judge Foschio cited federal "employment discrimination and antitrust cases" which refused to apply the privilege. Syposs, 179 F.R.D. at 410-11. However, there is a fundamental difference between the federal interests at stake in employment discrimination or antitrust cases and those arising under the FTCA. For example, "Title VII creates a cause of action against an employer who has engaged in certain discriminatory conduct" ( Thanning v. Gulotta, 898 F.Supp. 134, 138 (E.D.N.Y. 1995), emphasis added), in order to effectuate "the purpose of Congress to assure equality of employment opportunities and to eliminate ... discriminatory practices". McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
Thus, in University of Pennsylvania, involving the investigation of a professor's Title VII charge of discrimination on the basis of race, sex, and national origin ( 42 U.S.C. § 2000e-2(a) ), the Court rejected the University's assertion of peer review privilege as a basis for refusing to produce tenure evaluations of the professor and others, reasoning that while "confidentiality is important to the proper functioning of the peer review process under which many academic institutions operate ... the costs associated with racial and sexual discrimination in institutions of higher learning are very substantial. Few would deny that ferreting out this kind of invidious discrimination is a great, if not compelling, governmental interest. Often ... disclosure of peer review materials will be necessary in order for the Commission to determine whether illegal discrimination has taken place". 493 U.S. at 193, 110 S.Ct. 577.
Similarly, in rejecting a claim of peer review privilege in the antitrust context, the court in Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1062, 1063 (7th Cir. 1981) cited the "strong public interest in open and fair competition which is embodied in the Sherman Act under which the case arises", concluding that "[t]he public interest in private enforcement of federal antitrust law in this context is simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the Hospital's privilege".
*351 Unlike federal discrimination and antitrust statutes, the FTCA "does not create federal substantive causes of action". Sumner v. United States, 794 F.Supp. 1358, 1364 (M.D. Tenn. 1992). It provides only that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under the circumstances". 28 U.S.C. § 2674"[T]his is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence." Feres, 340 U.S. at 141, 71 S.Ct. 153.
28 U.S.C. § 1346(b)(1) gives district courts exclusive jurisdiction to determine "claims against the United States, for money damages ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". Accordingly, "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 86 (2d Cir. 2012).
In doing so, the court must apply "the whole law of the State where the act or omission occurred". Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). "Applying the state's 'whole law' requires that we look to whatever law, including federal law, the state courts would apply in like circumstances involving a private defendant." Caban v. United States, 728 F.2d 68, 72 (2d Cir. 1984) (emphasis added). Thus, in a medical malpractice action under the FTCA, "state law applies to the United States ... in the same manner it would apply to a private person". Kawache v. United States, 2011 WL 441684, *14 (E.D.N.Y. 2011), aff'd, 471 Fed.Appx. 10 (2d Cir. 2012) (holding that state law governs the elements of medical malpractice, the burden of proof, and whether expert testimony is needed).
In Syposs, Judge Foschio reasoned that "where the issue or right being adjudicated derives from a federal source, federal courts have long recognized that federal laws rather than state laws govern unless Congress otherwise provides". 179 F.R.D. at 411 (quoting Menses, 942 F.Supp. at 1321 ). However, this reasoning ignores the fact that the "law of the State [is] the source of substantive liability under the FTCA". F.D.I.C. v. Meyer, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (emphasis added).
I question the holding of Menses for other reasons as well. For example, Menses suggested that in enacting the FTCA, "Congress ... intentionally ensured that claims against the United States would be decided only according to federal procedural law. Any argument for applying state privilege law is eliminated". 942 F.Supp. at 1324. However, in this Circuit "state rules on privilege are substantive", not procedural, since they "affect[ ] private conduct before the litigation arises". Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555, n. 2 (2d Cir. 1967). Menses also cited "the federal government's substantial interest in the application of uniform laws in light of its subjection to widespread litigation", reasoning that "[t]o permit the imposition of divers state privilege laws to Federal Tort Claims Act cases would allow the uneven administration of the law that ... Rule 501 attempts to avoid". 942 F.Supp. at 1324. Not so: the FTCA "recognizes and assimilates into federal law the rules of substantive law of the several states, among which divergencies are notorious". Feres, 340 U.S. at 142, 71 S.Ct. 153.
"Since the United States has only waived sovereign immunity to the extent it is treated as a private party in like circumstances would be, 28 U.S.C. § 2674, the courts may not deprive it of a benefit to *352 which a similarly situated private party would be entitled." Brashear v. United States, 847 F.Supp.2d 41, 46-47 (D.D.C. 2012). For example, in Hill v. SmithKline Beecham Corp., 393 F.3d 1111 (10th Cir. 2004), the court held that Colorado's "certificate of review" requirement[5] must be applied in an FTCA action. "State substantive law applies to suits brought against the United States under the FTCA .... Colorado's certificate of review requirement is a substantive rule of law (citation omitted). Consequently, we conclude that the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA." Id. at 1117.
The court reasoned that "to hold that the United States is not entitled to the protection of the certificate of review requirement would place it in a differently situated position than private parties defending against professional negligence claims". Id. at 1118. Those same reasons apply here: like Colorado's certificate of review requirement, New York's peer review privilege is a rule of substantive law, and the failure to apply that privilege would cause defendants to be treated differently than private parties in a state court action.
Plaintiff argues that "a majority of federal courts who have addressed this issue, in various jurisdictions, have declined to apply a state peer review privilege in a wide variety of federal actions". Braun Reply Affirmation [74], ¶ 15. However, for the reasons discussed I conclude that, regardless of the rule in other types of actions, in an FTCA action New York's peer review privilege should be recognized as a matter of federal common law, "in the light of reason and experience". Fed. R. Evid. 501. See 2 Mueller, Kirkpatrick, Federal Evidence § 5:4 (4th ed.) ("[i]t is true that [under the FTCA] state law does not apply of its own force in federal courts and applies by virtue of congressional directive instead. However, in these cases state law does far more than fill mere 'interstices or gaps,' and there is more room to suppose that state privilege law applies and less reason to apply federal privilege law").
C. Scope of the Privilege
Although I conclude that New York's peer review privilege applies in this case, there are limits to that privilege. "Statements of a defendant in medical malpractice litigation that were made before a peer review board or for quality assurance evaluation are not privileged when they relate to the subject matter of the litigation." Bryant ex rel. Bryant v. Bui, 265 A.D.2d 848, 848, 695 N.Y.S.2d 790 (4th Dept. 1999). See also D'Angelis v. Buffalo General Hospital, 2 A.D.3d 1477, 1478, 770 N.Y.S.2d 553 (4th Dept. 2003) ; Logue, 92 N.Y.2d at 18, 677 N.Y.S.2d 6, 699 N.E.2d 365.
Plaintiff has requested that I "conduct an in camera review of responsive documents in defendants['] possession to determine if statements of the physicians Jodi Ball, MD; Michelle Frech, DO and John Hellreigel MD and/or any non-privileged documents exist which should be produced to plaintiff". Braun Reply Affirmation [74], ¶ 20. Because Dr. Ball is the only individual defendant, it is only her statements that would be subject to discovery under Bryant. I have examined the peer review documents submitted to me for in camera review, and have found no statements in those materials. Absent further order of the court, by January 8, 2018 defendants should either confirm that there are no such statements, or produce them to counsel for plaintiff.
*353 CONCLUSION
For these reasons, plaintiff's motion to compel production of peer review documents [72] is granted to the extent that the documents may contain statements of defendant Jodi Ball, M.D. relating to the incident which is the subject matter of this action, but is otherwise denied.

Colo.Rev. Stat. § 13-20-602(1)(a), requiring plaintiff in a professional negligence action to certify that it has obtained an expert opinion that the claim has merit.